SAMUEL FOWLER *vs.* SAMUEL P. LEE.—*June*, 1839.

A judgment by default against a sheriff, under the act of 1794, ch. 54, sec. 1, is equally valid with a judgment on verdict.

If the debtor obtains an injunction to stay proceedings upon the judgment against him, after a judgment by default against the sheriff has been entered, for not returning an execution issued upon such judgment, that circumstance does not *per se*, entitle the sheriff to the same relief.

A court of equity will not arrest the judgment against the sheriff, unless it appears that it would be unjust and unconscientious to enforce it, and whether that be so or not, depends upon the facts set forth in his bill.

And the court, upon an application for an injunction by the sheriff, may look at the grounds upon which the injunction obtained by the debtor rests.

The return of a writ "cepi" by the sheriff, without having served it, does not necessarily amount to fraud, and though liable to damages for such official misconduct to the party grieved, a judgment founded on such return, is not, for that reason alone, to be set aside.

Nor is a judgment liable to impeachment, solely upon the ground that an attorney, without instructions, has entered a voluntary appearance upon a return by the sheriff of "non est" and confessed the judgment, though for acting without authority he is responsible to his principal.

Courts of chancery do not lightly interfere with judgments at law. They interpose only to prevent fraud, or to relieve against substantial injury, or gross injustice, and never merely for the correction of informalities, or irregularities in legal or judicial proceedings.

To obtain an injunction against a judgment, upon the ground that the defendant cannot safely pay it, he should file a bill of interpleader against the parties appearing to be entitled, and pay the money into court, to be held for the benefit of the party showing himself to be entitled.

APPEAL from the Court of Chancery.

The bill in this cause was filed in January 1839, by *Samuel Fowler*, alleging that, at October term 1837, of *Prince George's* County Court, a judgment at law was obtained by the executors of *James Fitzgerald*, for the use of *Samuel P. Lee*, against *George Semmes*, which would appear as well by a short copy thereof exhibited with this, as also by reference to a suit depending in equity, between the said *Semmes* and the appellee in this cause. That upon the judgment against *Semmes*, a writ of *fieri facias* was issued thereon, directed to the appellant, then high sheriff of *Prince George's* county: that at October term 1838, the appellant *Fowler* was laid under a rule to return said writ of *fi. fa.*, and at the same term a judgment by default was obtained against him: that sometime in *November* 1838, the aforesaid *George Semmes* filed the bill against the said *Samuel P. Lee*, referred to as before as a part of this bill, in which he prayed that, the said *Samuel P. Lee* might be enjoined from enforcing the payment of the said judgment of *Fitzgerald's* executors for his use against him the said *Semmes:* that an injunction was granted as prayed, by which the complainant *Fowler*, as sheriff aforesaid, was enjoined and prohibited from making the money on the writ of *fieri facias* aforesaid; the non-return of which was the ground of the judgment of default against him as before mentioned: that the law term of the *October* term of *Prince George's* county court 1838, was adjourned over to the first Monday of April 1839, which deprived him of the power of having the said judgment by default stricken out; that it would be manifestly inequitable that the plaintiff at law should have execution against the complainant, whilst the injunction granted to stay proceedings upon the judgment at law remains in force; and that he is informed and believes that, the said *Samuel P. Lee* intends issuing an execution on the said judgment of default, although the complainant *Fowler* is prohibited by the said injunction from making the money on the *fi. fa.* aforesaid, and although the said *S. P. Lee* would be unable to give to the complainant, if he

were coerced to pay the said judgment by default, an available assignment of the judgment against the said *Semmes;* which the complainant alleges he is entitled to. Prayer for an injunction, forbidding execution on the said judgment by default, so long as the injunction on the original judgment remains; and for subpœna, &c.

The bill in this cause was filed on the equity side of *Prince George's* county court; where C. Dorsey, A. J., ordered the injunction to issue on bond being filed, which was done.

The defendant then prayed that the cause might be transmitted to the court of Chancery, and the cause was duly transmitted to the court of Chancery, where a transcript of the record in the case of *Semmes vs. Lee*, in which an injunction had been obtained on the original judgment, was also filed.

On the 30th April 1839, the Chancellor (BLAND) on the motion of the defendant *Lee* dissolved the injunction, and the plaintiff subsequently petitioned the honorable JOHN STEPHEN, one of the judges of the Court of Appeals, under the act of 1832, ch. 197, to allow him an appeal from the dissolution, which being granted, he prosecuted the present appeal.

The cause was argued before BUCHANAN, C. J., ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By ALEXANDER for the appellant, who cited 2 *Tidd.* 1237. *Taswell vs. Stone*, 4 *Burr.* 2454.  4 *Term.* 642.  1 *Ves.* 25. *Stone vs. Tuffin, Ambler*, 32.  2 *Dick.* 549.  16 *Ves.* 141. 17 *Ves.* 385.  3 *Merr.* 234.

C. C. MAGRUDER and J. JOHNSON for the appellee, cited 1794, *ch.* 54.  *Dilly & Heckrotte vs. Barnard*, 8 *Gill & John.* 171, 187.  6 *Rand.* 110.  1 *Chit. Plea.* 386.

DORSEY J., delivered the opinion of the court.

The provisions of the act of 1794, ch. 54, sec. 1, are so explicit, as to leave no room for doubt or speculation as to the character and efficacy of a judgment by default, rendered against

a sheriff for not returning an execution within the time limited by rule of court for that purpose. In the language of the act of assembly, it shall have the same effect, operation, and validity, as any judgment rendered upon any verdict of a jury. Suppose that, in this case, instead of a judgment by default, it had been a judgment rendered on the verdict of a jury, in a suit brought against the sheriff for neglect of duty in not returning the execution; would it follow as a necessary consequence (as it has been insisted) that if an injunction should subsequently be obtained by the debtor against the sheriff and judgment creditor, that the judgment against the sheriff must, also, be enjoined, and that in awarding an injunction on the judgment against the sheriff, you are not permitted to examine into the causes, the sufficiency or insufficiency of the grounds, on which the debtor obtained the first injunction.

A proposition so broad, and inconsistent with the design of the act of assembly, cannot be sustained. If it were, it would follow, that if the basis of the debtor's injunction were wholly insufficient to have justified its issue, and could by no possibility be, in equity, a ground for impairing the efficacy of the judgment against the sheriff; nay, if it were even the receipt of the amount of the execution by the sheriff himself, the judgment against the sheriff must notwithstanding be enjoined, and continue so enjoined, as long as the original injunction remained in force, even though it were made perpetual, upon the very ground that, the sheriff had received under the execution the whole amount for which the creditor had obtained a judgment against him. If you cannot look into the debtor's bill to see the ground upon which the original injunction issued, so neither can you look into it, to see the ground upon which it has been perpetrated. We do not think that the proceedings on the debtor's bill can work that estoppel, or have that conclusive effect, which has been ascribed to them, as between the parties litigant in this case. As to them, they are *res inter alios acta*, open to examination, and further than is consistent with equity and conscience, conclusive upon none of the rights of the parties in this cause.

A court of equity ought not to arrest the execution of the judgment against the sheriff; unless it appears, that it would be unjust and unconscientious to enforce it. Whether it be so or not, depends upon the facts set forth in the appellant's bill of complaint: his equity must be shewn by his bill, or he is entitled to no relief. His liability at law is absolute and complete, and the legal rights of the appellee cannot be interfered with, unless it be satisfactorily shewn that, justice and conscience demand such interference. The enquiry then necessarily presents itself—what are the grounds of equity set forth in the debtor's injunction bill? He admits the execution of the single bill, on which judgment was rendered against him—does not even intimate that any portion of it has ever been paid, or in any manner discharged, or make any statement to shew, that either at law or in equity, he should be exempt from his obligation to pay it. But he states that, in executing the single bill, (which is joint and several) he was the security of one *George Harbin*, who gave the same to *George R.* and *John Fitzgerald*, executors of *Jane Fitzgerald*, for property by him purchased at the sale of her estate; that *George R.* and *John Fitzgerald* have been long since dead, without having instituted any legal proceedings on said single bill, and that no further administration has been granted on the estate of *Jane Fitzgerald;* that no suit was ever instituted on the single bill against said *Harbin.* That sometime after the death of the said executors, *Samuel Philip Lee*, one of the heirs and legal representatives of said *Jane Fitzgerald*, having obtained possession of said single bill, instituted suit thereon in *Prince George's* County Court against *Semmes* the debtor, and obtained judgment against him; that he had no knowledge of the said suit until judgment was rendered against him. "That he was never served with any process by the sheriff of *Prince George's* county, or either of his deputies, commanding him to appear and defend said suit, in consequence whereof judgment was obtained against him by means of fraud and surprise." These are the facts in *Semmes'* bill, upon which he calls upon *Prince George's* County Court per-

petually to enjoin the judgment rendered against him. Tis true he asserts, as an inference, that the judgment against him was obtained by fraud and surprise, because no process was served upon him, commanding him to appear and defend the suit; but such an inference is not the necessary result of the facts from which he has deduced it. The copy of the judgment which he has exhibited, shews, either that he appeared to the suit in proper person, or by attorney, as the judgment was rendered by confession or by default. It does not allege that, there was any fraudulent concert or combination between *Lee* and the sheriff, and the attorney (if any) who appeared for him in *Prince George's* County Court. The sheriff may have returned the writ, *cepi*, though never served, without being guilty of fraud. If so, he is liable in damages for his false return to the party aggrieved; but such official misconduct of itself, alone, forms no ground for setting aside the judgment in the cause. An attorney may, without instructions, have entered a voluntary appearance upon a *non est*, or appeared to a writ thus returned by a sheriff, and confessed a judgment without being guilty of fraud, or solely, on the ground of such misconduct, subjecting the judgment to impeachment in a court of equity. If the attorney has acted without authority, he is answerable to his principal for the consequence of his acts. It is not alleged, that by reason of the rendition of this judgment, *Semmes* has been rendered liable for the payment of a debt which, *ex aquo and bono,* he is not bound to pay; that he was deprived of an opportunity of making a meritorious defence to the action, which he would have made, if apprised of its pendency; or that if the judgment were now opened, that he has any such defence to make.

Courts of chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to reliev-from substantial injury or gross injustice, that its high and extraordinary power of interference by injunction is ever resorted to. It is never exerted merely for the correction of informalities or irregularities in legal or judicial proceedings. He who seeks to avail himself of such defects, must prosecute his re-

medies at law; from a court of equity he can receive no countenance. A court of chancery, too, looks well to the consequences of its acts, and the case must indeed be a strong one, which would induce it to nullify a judgment at law, and thus, as here, put it in the power of a debtor to plead the statute of limitations to a debt, which he does not deny to be justly due.

But suppose a court of equity would relieve against a judgment rendered under the circumstances before mentioned; upon what terms would relief be granted. "He who seeks equity must do equity," is a maxim almost as old as the tribunal to which it applies. To obtain relief by injunction against this judgment, *Semmes* should by his bill have offered to do equity, by paying into court the debt which, by his own statements, he had shewn himself in honor and in conscience under an obligation to pay. It may be said that *Semmes* could not safely have paid the debt for which the judgment was rendered;—that he might again be compelled to pay the same debt to the legal representatives of *George R.* or *John Fitzgerald.* If such was his apprehension, he has not relied on it, as a ground of relief; and if he had, it was his duty to have filed a bill of interpleader against such representatives and the appellee, and paid the debt into court, to be held for the benefit of the party shewing his right to receive it.

It appearing to us, therefore, that there was no foundation for issuing the injunction on *Semmes'* bill; and that there is nothing against conscience and equity in enforcing the judgment against the appellant, rendered under the act of 1794, ch. 54, we think the Chancellor was right in dissolving the injunction issued in this case by the county court, and therefore affirm his order passed for that purpose.

ORDER AFFIRMED.