(Decided June 20th, 1861.)

---

# WILLIAM BOYD and JOHN M. HAUCK, Sheriff, *vs.* THE CHESAPEAKE & OHIO CANAL COMPANY.

The word *"process,"* used in the 5th sec. of the Act of 1832, ch. 306, is sufficiently comprehensive to apply to the service of writs of attachment on a corporation *as garnishee*; and any corporation chartered by the laws of Maryland, may be brought into court as defendant, in the mode pointed out by that section.

Service of notice of an attachment upon two of the officers and directors of a corporation, is sufficient notice to the corporation; if notice is given to a director, officially, for the purpose of being communicated to the board, although such notice should not be communicated, the corporation is bound by it.

It is clearly within the power of the court, upon application made within the term, to allow a sheriff to amend his return to a writ of attachment, and, by the Act of 1854, ch. 75, the return to such writs is made evidence of the same, as in case of service of other writs.

A plaintiff in attachment, who files interrogatories to be answered by the garnishee, may waive them, and a rule of court as to service of them, &c., is not to be enforced until the *appearance* of the garnishee, and the plaintiff becomes informed of the defence relied upon.

If there be irregularity in entering a judgment of condemnation by default against a corporation, because a writ of inquiry was not first had, as provided by the Act of 1834, ch. 305, sec. 4, such irregularity will not justify the interference of a court of equity, by injunction, to restrain execution of the judgment.

The Chesapeake & Ohio Canal Company cannot shelter itself or shield its property from execution by its creditors, under the protection of mortgages thereof, executed by it to the State; whatever protection the State may be entitled to claim as mortgagee, must be asserted by itself.

Appeal from the Equity Side of the Circuit Court for Washington county.

The bill in this case was filed on the 16th of October 1858, by the appellee against the appellants, for an injunction to stay execution of a judgment of condemnation against the complainant, in favor of the defendant, Boyd.

It appears, from the record, that Boyd had recovered a judgment against one Wm. Brown, in the circuit court for Washington county, for $1435.51, with interest and costs, upon which he issued an attachment, by way of execution, returnable to the November term, 1857, of that court. The return of the sheriff to this writ states that he laid the same, on the 18th of August and 11th of September 1857, in the hands of Jacob H. Grove and Jas. Coudy, two of the directors of the Chesapeake and Ohio Canal Company, and gave them notice to appear, &c. Subsequently, on the first day of the succeeding term, upon application of the plaintiff, the court granted leave to the sheriff to amend his return, and he accordingly filed an amended return, as follows:

"Laid the within and foregoing attachment in the hands of the Chesapeake & Ohio Canal Company, to the amount of the damages, interest and costs, on the 18th day of August 1857, and then and there gave notice to Jacob H. Grove, as

Boyd, *et al.*, *vs.* Ches. & Ohio Canal Co.

one of the officers and directors of the said canal company, and on the 11th day of September 1857, also gave notice to James Coudy, another officer and director of the said canal company, that the said Chesapeake & Ohio Canal Company be and appear in the said circuit court here, to show cause why the said sum of money so attached should not be condemned for the use of the plaintiff in the said attachment, and so-forth, as by the said writ I was commanded."

Upon the return of the attachment a case was regularly docketed against the said canal company, as garnishee, and interrogatories filed, to be answered by the said garnishee. The company failing to appear at the return term, the case was continued to the succeeding March term, and the garnishee still failing to appear, a judgment of condemnation was entered, on the 1st of April 1858, for the whole amount of the judgment on which the attachment issued.  On this judgment of condemnation a *fi. fa.* was issued to the November term, 1858, of said court, under which the sheriff proceeded to levy upon and seize certain personal property of the canal company, along the line of the canal, in Washington county, consisting of house canal-boats, dirt scows, and furniture thereto, a horse, mare, and various tools, implements, &c., and advertised the same for sale, on the 19th of October 1858.

To restrain this proceeding the injunction was applied for in the present case.  The bill states that the complainant is a corporation chartered by the laws of Maryland, having its office or place of business at the time of issuing said attachment and all the proceedings thereunder, and at the present time, in the city of Washington, in the District of Columbia, and asks for an injunction upon the following grounds:

1st.  That the attachment was not made known to the complainant in the mode and manner of serving such a writ upon a body corporate, either at common law or under the statutes of Maryland.

2nd.  That by rule 41 of said court, (a certified copy of which is exhibited,) it is required that "on filing of interrogatories to be answered by a garnishee in attachment, a rule shall be entered that the garnishee answer the same in fifteen

days after service of a copy of said interrogatories and of said rule," the law itself requiring that where interrogatories are exhibited in writing to a garnishee, they should be answered by a rule of court. That in this case no such copy of the interrogatories filed was ever served upon the complainant at any time, nor was a rule entered in said case that the complainant, as garnishee, should answer the same.

3rd. That regarding said judgment of condemnation as a judgment by default, no inquiry by a jury was instituted to ascertain the amount of the plaintiff's claim, as required by Act of Assembly in such case made and provided, where a corporate body is in default.

4th. That the *fieri facias* was issued in this case without the plaintiff in the execution having first entered, or given good and sufficient security before said court to make restitution, as provided by Acts of 1715, ch. 40, sec. 3, and 1834, ch. 189.

Upon these reasons the complainant relies to show that the judgment of condemnation *is void and of none effect.* The bill then further charges:

5th. That in the matter of the attachment and judgment of condemnation the complainant has been taken greatly by surprise, having had no knowledge of the same until execution was issued and levied, and having at no time appeared to the suit as garnishee, and that the case was docketed against it as garnishee under the direction of Boyd, or his attorney, and without the knowledge or consent of the complainant. That it has no knowledge that the attachment was made known to any of the directors or other officers of the company, more than what is disclosed in the return of the sheriff to said writ, and then only since said execution and levy; that it owed Brown but a small sum of about $175, and had it been aware of this proceeding, it would have appeared, answered the interrogatories and protected itself against the recovery of so large and unjust a judgment.

6th. That the canal-boats, scows and other articles taken under execution, are the necessary implements for keeping the canal in repair, and accommodating it to its chartered

purposes, and that such things are expressly exempt from attachment or execution by the laws of Maryland.

7th. That in pursuance of sundry Acts of the General Assembly of Maryland, granting loans and subscriptions to the complainant, for carrying on and completing its said work, the said complainant having agreed to and accepted the provisions thereof, and availed itself of the pecuniary aid thereby provided, was required to make and did make to the State of Maryland, from time to time, various mortgages and conveyances of all its property, real and personal, then or thereafter acquired, and all its nett tolls and revenues, to secure the payment of principal and interest, and the fulfillment of the various conditions imposed upon it by said Acts of Assembly, all of which said Acts and mortgages are more particularly mentioned, referred to and exhibited in another bill of complaint filed in this court by the said State of Maryland against the said William Boyd and John M. Hauck, sheriff, for an injunction to stay the said sale of the sheriff of the said articles levied upon under said *fi. fa.*, and to which, without repeating or exhibiting the same more particularly, the complainant prays leave to refer and rely upon in the same manner as if they were herein and herewith as fully set forth and exhibited; that the said chattels and effects are covered by said several mortgages, and are the property of the State of Maryland, for the purposes aforesaid, though in possession of the complainant, for the use of its work, as hereinbefore stated, and that the same, or the equity which the complainant has therein, cannot be levied upon to satisfy any debt of the complainant.

8th. That to deprive the complainant of said property, by sale or otherwise, would work great and irreparable injury to the complainant, in the condition in which it now is with regard to the repairs on said canal, particularly on that portion of it on which said property now is, the said company being engaged in the construction of two new dams across the Potomac, of the most urgent and vital necessity, and at a season of the year when every day is important, and if the defendants were allowed to proceed with said execution and

sales, the work of the complainant would be most seriously and injuriously affected and delayed, far beyond any damages or compensation which it might obtain by any proceedings at law.

Besides praying for an *injunction to restrain* proceedings under the execution, the bill prays for answers, but not on oath, for a decree setting aside or vacating the judgment of condemnation, or for opening and continuing it, and allowing the complainant, as garnishee, to appear and answer the interrogatories, and for general relief.

The injunction was ordered and issued, upon the required bond being filed and approved. The defendants then filed their answers, (that of Boyd being sworn to,) controverting the various propositions stated in the bill, and entered a motion to dissolve the injunction. A general replication was then filed by the complainant, and the case was heard on the motion to dissolve. This motion was overruled, and the following opinion was delivered by the court, (PERRY, J.)—

"There can be no doubt that, by the law in Maryland, it is well established, that a mortgage or bill of sale of a personal chattel not *in esse*, is inoperative to transfer a title to the grantee, either in law or equity. Such has been recently decided by the Court of Appeals, in *Hamilton & Robinson vs. Rogers*, 8 *Md. Rep.*, 301. In the absence of legislation applicable to the transfers by the complainant in this cause, it is supposed no question could be made in the case, as the property levied upon was not in existence at the date of the mortgages to the State, but has been acquired at a subsequent period. No one can doubt the power of the Legislature to sanction a contract by special law, and if originally illegal, that body has a right to relieve it from the imputation of illegality. Nor can it be doubted, with any show of reason, that the Legislature has the power to authorize the transfer of that which has no real or potential existence, and to confer a title upon a grantee. Such transfers at common law may be wholly illegal and void, but the right may be conferred by legislation. *White Water Valley Canal Company vs. Vallette, et al.*, 21 *How.*, 414. *Coe vs. Hart, et al.*, 6

*American Law Register*, 28. In regard to the power of the Chesapeake & Ohio Canal Company to make the mortgages to the State, no one can question it. The original Act and the several supplements all leave no doubt in my mind upon that subject. I have examined the various Acts of Assembly authorizing the execution of the mortgages, and to which the complainant has referred, and they fully empower the Chesapeake & Ohio Canal Company to pledge the whole of the nett revenues of that company, and the whole of the water-rights, lands and other property at any time acquired by it. The Legislature having authorized it, and the mortgages being made in conformity with the requirements of law, it cannot be questioned by this court. That which has been the cause of much doubt is, whether the complainants were the proper parties to ask the process of this court? But, if doubt could be indulged, it is entirely removed by the case of *Lucas, et al., vs. McBlair, et al.,* 12 *G. & J.,* 1. They (the directors) are the persons the law has required to protect the property of that corporation. They, and no other persons, could come into a court of equity to protect the property of the company, and if you take away such right, what party who could ask this court to assert its power to prevent encroachments in plain cases of equitable rights existing in the company? This corporation is one of great public interest. The directors are, in some sense, the trustees for the public, and are certainly as much so as the parties seeking relief in the case of *Lucas, et al., vs. McBlair, et al.* It has also been argued that the State of Maryland has not been made a party, and for this reason the injunction should be dissolved. In this I do not agree. The case of *Lucas, et al., vs. McBlair, et al.,* in most of its material features, is like the one under consideration. The directors in the canal company, like the trustees in the case referred to, are invested by law with an important public duty, and must be entitled to use all the appropriate means necessary to the end in contemplation, and must be regarded as having such an interest in the subject confided to them as will enable them to proceed, before the tribunals of the country, for the due protection of the rights

Boyd, *et al.*, *vs.* Ches. & Ohio Canal Co..

entrusted to them. Independent of this, the propriety of dis-
solving the injunction may be questioned for the reason that
the want of a party defendant is generally no ground upon
which to claim a dissolution of an injunction, as a necessary
party may be supplied before a final hearing. This principle
is maintained in the case of *Lucas, et al., vs. McBlair, et al.*
I feel no embarrassment in regard to the construction of the
Acts of Assembly in respect to mortgages, &c., as the defend-
ants admit the execution of them to the State, and that the
property levied upon is the property of the Chesapeake &
Ohio Canal Company. I will therefore protect it against the
execution of the defendants. From the views which I en-
tertain, as above expressed, I will overrule the motion to
dissolve.''

From the order so passed, the defendants appealed.

The cause was argued before LE GRAND, C. J., BARTOL,
and GOLDSBOROUGH, J.

*R. H. Alvey,* for the appellants:

1st. If any of the alleged irregularities in the attachment
proceedings and judgment of condemnation really occurred,.
they afforded no ground for the interposition of a court of
equity, to stay execution of the judgment. It has been
repeatedly asserted, that courts of equity never interfere
''merely for the correction of informalities or irregularities in
legal or judicial proceedings. He who seeks to avail himself
of such defects must prosecute his remedies at law; from a
court of equity he can receive no countenance.'' 10 *G. &
J.,* 363, *Fowler vs. Lee.* 14 *Md. Rep.,* 61, *Gardner vs.
Jenkins.* But there were in fact no irregularities in the
proceedings.

*First.* The service of the attachment was in all respects
legal and proper. By the amended return of the sheriff it
appears, that the attachment was laid in the hands of the
appellee, and notice thereof given to two of its directors.
That this amendment was properly made is clear from all
the authorities. 4 *H. & McH.,* 498, *Hutchins vs. Brown.*

10 *Ala.*, 92, *Smith vs. Leavitts.* 1 *Pick.*, 461, *Adams vs. Robinson.* 3 *Smedes & Mar.*, 409, *Planters Bank vs. Walker.* By the Act of 1854, ch. 75, the return to writs of attachment is made evidence in the same manner as returns to other writs. That the return states a case of sufficient notice to the corporation is also clear from the case of *United States Ins. Co., vs. Shriver,* 3 *Md. Ch. Dec.,* 381. The Act of 1832, ch. 306, sec. 5, clearly authorises a corporation to be brought into court *as garnishee*—the word *"process,"* as there used, being sufficient to embrace the service of attachments on corporations, as garnishees. 2 *Coke,* 697, 703, 736. 12 *Pet.,* 102, 134, 135, *Beaston vs. Farmers Bank of Delaware.* 7 *Md. Rep.,* 1, *Germania vs. The State.* 12 *Grattan,* 655, *Balt. & Ohio R. R. Co., vs. Gallahue.* The appellee being thus warned, was subject to no surprise in the obtention of the judgment of condemnation. There is no charge that it was by any fraud or accident that the appellee was prevented from making all proper and available defences to the attachment proceedings; and failing to appear, of itself, an act of gross negligence, the company is, upon well established principles, precluded from all relief in a court of equity. 6 *G. & J.,* 309, *Gott, et al., vs. Carr.* 8 *G. & J.,* 170, *Dilly, et al., vs. Barnard.* 7 *Gill,* 189, *Briesch vs. McCauly.* 13 *Md. Rep.,* 58, *Peters vs. League.* *Ibid.,* 196, *Windwart vs. Allen.* 1 *Sch. & Lef.,* 201, *Bateman vs. Willoe.*

*Second.* The discovery by way of answer to interrogatories is intended exclusively for the benefit of the plaintiff in the attachment, and it is at his option whether he will call for it or not. The garnishee has no right to insist that the plaintiff shall elicit a discovery upon interrogatories, and no right, after discovery made, to compel the plaintiff to use the answers as evidence. *Act of* 1795, ch. 56, sec. 5. 10 *Md. Rep.,* 210, *Devries vs. Buchanan.*

*Third.* The fact that there was no inquiry executed at bar, under sec. 4 of the Act of 1834, ch. 305, is no ground of complaint, as it is obvious that Act is not applicable to a case like this of proceedings by way of attachments on judgments, but simply to suits on original causes of action.

*Fourth.* That no bond was given for restitution within the year and day, forms no objection to the *fi. fa.* issued on the judgment of condemnation, for no such bond is required in cases of attachment by way of execution.

2nd. However indigent may be the circumstances of this corporation, it has no right of exemption under sec. 5 of the Act of 1715, ch. 40. That provision was made for the benefit of the laboring inhabitants of the province, so that they should not be deprived of "all livelihood in future;" and surely it cannot be seriously contended that the authors of that statute had in contemplation corporations such as this.

3rd. The alleged mortgages to the State, afford, in this case and to the appellee, no ground of relief, and that for several reasons:

*First.* Because the State is not here a party asking protection of its rights. 4 *Gill*, 394, *Dolan & Foy vs. Mayor & C. C. of Balt.;* and there is no equity or propriety in permitting this debtor company to set up the mortgage lien of the State, to protect the property levied on, as against the execution of a creditor of the company. It would be an anomaly in equity jurisprudence, to afford any such shield to a debtor against the execution of his creditor. If the property of the company is not adequate to the satisfaction of the mortgage claim of the State, then the appellee has no interest in the subject matter sufficient to support its application for the injunction; and if the property is more than sufficient to discharge the lien of the State, then the appellee has an interest subject to execution, the levy upon and sale of which equity will not, at the instance of the appellee, enjoin. The company clearly had no right to file this bill in behalf of the State. 8 *Humph.*, 103, *Turnpike Co., vs. Young.*

*Second.* Because the property levied on is all personal, and for any injury thereto there is ample remedy at law. The State, if it holds the property under mortgages, could maintain either replevin or trover; and, therefore, would not, on its own application, be entitled to an injunction to restrain execution, much less should an injunction issue upon

the application of a debtor for whose debt the property was taken. 6 *G. & J.*, 72, *Jamieson vs. Bruce.* 16 *Md. Rep.,* 416, *Freeland & Hall vs. Reynolds.* *Ibid.,* 86, *Lewis, et al., vs. Levy.* 1 *Madd. Rep.,* 90, *Garstin vs. Asplin.*

*Third.* Because the property levied on is not embraced in or affected by the mortgages to the State, having been acquired by the appellee since their execution. The Acts of Assembly, in pursuance of which the mortgages were made, depending for their efficacy and force upon the agreement and acceptance of the company, are mere contracts, as distinguished from laws; and being contracts, although the State, in her corporate capacity, is a party, they are nevertheless to be construed according to the established principles which regulate contracts generally. 4 *G. & J.,* 128, 130, *Canal Co., vs. Railroad Co.* 3 *Cranch.,* 1, *Huidekoper's lessee vs. Douglass.* And such being the case, if the State were a party asking protection of this after-acquired property, which had no actual or potential existence at the time of the execution of the mortgages, relief could not be granted; for it has been decided by this court in proceedings both at law and in equity, that property not having actual or potential existence at the time, is not the subject of grant, and, therefore, cannot be mortgaged. 8 *Md. Rep.,* 301, *Hamilton, et al., vs. Rogers.* 10 *Md. Rep.,* 467, *Rose & Gauss vs. Bevan.* 4 *Metcalf,* 306, *Winslow vs. Merchants Ins. Co.* 10 *Metcalf,* 481, *Jones vs. Richardson.* 2 *Cush.,* 294, *Barnard vs. Eaton.*

3rd. The copies of the mortgages to the State should have been exhibited with the bill, and, as part of the proceedings in the case, before the granting of the injunction. The court should be informed by the best means possible, of the contents of these assignments; and their construction being exclusively for the court, it is not admissible for the complainant merely to state legal conclusions as to the effect and operation of the conveyances, as in this bill. That the proper exhibits have not been filed, is sufficient cause for the dissolution of the injunction. 2 *Md. Rep.,* 138, *Eyler & Matthews vs. Crabb.* 12 *Md. Rep.,* 315, *Nusbaum vs. Stein.* 8

*G. & J.*, 324, *Union Bank vs. Poultney & Ellicott.* 16 *Md. Rep.*, 69, *Mahaney, et al., vs. Lazier, et al.*

*4th.* The complainant has disclosed in its bill that, the State of Maryland had filed a bill against these same parties for an injunction to stay execution of these same proceedings, and that fact appearing it was sufficient, of itself, apart from all other grounds, for refusing the injunction, and, upon motion, ample reason for dissolving it. The pendency of another suit in equity for the same matter or object forms a full defence to the bill, for it is not allowable that a party should be doubly vexed for the same cause. Nor is it necessary to the sufficiency of the defence that the suits should be between the same parties. *Mitford's Eq. Pl.*, 248. 2 *H. & G.*, 374, 378, *Munikuysen vs. Dorsett.*

*A. K. Syester* and *D. Weisel,* for the appellee:

*1st.* This being a proceeding under the attachment laws, in which the court below had only a special jurisdiction, all the requirements of the Acts of Assembly must be strictly complied with to make the judgment of condemnation relied on effectual. It is insisted that it is irregular and void, because:

*First.*—This corporation cannot be a *garnishee* in an attachment like this. The Act of 1824, ch. 74, is the first Act in which corporations are mentioned, and it only applies to cases of corporations whose places of business are situated in *some of the counties of the State.* This is not a corporation located in any county. The Act of 1832, ch. 280, authorizes a corporation to be a *plaintiff* or *defendant only*, in an attachment, and does not say they may be *garnishees.* By the Act of 1832, ch. 307, a corporation may be a garnishee in reference to any stock held in it, or any debt due by it, and transferable upon its books, and in such a case this law directs notice of the attachment to be delivered to the president or other chief officer of the corporation, or left at its banking room, office, or place of business. The Act of 1832, ch. 306, sec. 5, only applies to cases where corporations are sued as *defendants,* and *garnishment* is not a proceeding or *process*

against them, within the meaning of this section.  This is shown by the *supplement* thereto, of 1841, ch. 336, which varies the service *in suits against corporations*, where the office is in Maryland, to service of the *summons* or *writ*, or a copy thereof upon the clerk of the company, &c.

*Second.*—But if this corporation could be a garnishee in this case, then it is insisted there was no sufficient service of the attachment upon it as garnishee.  The service was not in conformity to the mode pointed out by the Act of 1832, ch. 307, and in the absence of any Act providing how service is to be made, that pointed out by the common law must be followed; that is, notice must be served on the president, which has not been done here.  *Hinkley on Attachment*, 16, 18, 84.  1 *Tidd's Pr.*, 16.  3 *Bland*, 415, 420, *McKim vs. Odom*.  *Angell & Ames on Corp.*, 575, 576.  *Drake on Attachment*, secs. 468 to 470.  The garnishee must be summoned, (2 *H. & McH.*, 399; *Hinkley on Attachment*, 89,) and without notice of the proceeding, the judgment is void. 2 *Md. Rep.*, 451, *Wright vs. Wright*.  5 *Johns.*, 41, *Kilbourn vs. Woodworth*.  3 *Md. Ch. Dec.*, 212, *McKim vs. Mason*.  16 *Md. Rep.*, 171, *Clark & Jackson, vs. Bryan & Lunt*.  The original return of the sheriff shows that he laid the attachment in the hands of *two of the directors* of the company, and *gave them* notice to appear.  This is clearly wrong, and even if his amended return could be regarded as sufficient service under the Act of 1832, ch. 306, sec. 5, and that Act could be held to apply to this case, (which we deny,) still the court had no power to allow such an amendment to be made, so as to bring a *new party* into court, and none of the cases cited on the other side sustain such a position.  But again, this return does not show that the writ of attachment was made known to the garnishee in the *presence of witnesses*, nor was it sworn to by the sheriff, as required by the Act of 1854, ch. 75, sec. 1.

*Third.*—In case of interrogatories filed by a plaintiff for the garnishee to answer, a rule of court to answer must be entered, (Act of 1795, ch. 56, sec. 5,) and the rule of court, No. 41, in this case, required service of a copy of the rule

and the interrogatories; and this is peremptory *in every case* where interrogatories are filed to be answered by a garnishee. In this case, the omission to enter the rule and to serve the copies, only tended to keep the garnishee the longer in ignorance of this attachment proceeding.

*Fourth.*—The Act of 1834, ch. 305, sec. 4, provides for a writ of inquiry *first*, and an ascertainment by a jury *before any judgment* by default can be entered against a corporation. And by the Act of 1715, ch. 40, sec. 3, the plaintiff must enter security to make restitution before he can make his judgment efficient. Neither of these requirements was observed in this case.

2nd. The appellee was ignorant, in fact, of the proceedings, and wholly taken by surprise in the judgment of condemnation, and it is against conscience to enforce it under circumstances like these. The allegations of the bill, in this respect, make out a proper case for an injunction, and the answers do not deny them. 8 *G. & J.*, 186, *Dilly vs. Barnard.* 7 *Cranch*, 332, *Ins. Co., vs. Hodgson.* 10 *G. & J.*, 362, *Fowler vs. Lee.* 3 *Bland*, 612, *Cape Sable Company's case.* 7 *Gill*, 118, *Barnes vs. Dodge.* *Ibid.*, 196, *Briesch vs. McCauley.* 10 *Md. Rep.*, 178, *Koechlept vs. Hook.*

3rd. The property levied on under the *fi. fa.* in this case, is exempt from execution by the Act of 1715, ch. 40, sec. 5. These articles of property are, to the canal company, its necessary tools and household implements, and ammunition for subsistence, and, as such, are protected by this law from all attachments and executions whatsoever.

4th. The property so levied on is all under pledge and mortgage to the State of Maryland, under various Acts of Assembly, authorizing the transfer both of property then held or thereafter to be acquired, and of its nett tolls and revenues. These Acts are, 1834, ch. 241, secs. 1, 5; 1835, ch. 395, *secs.* 5, 7; 1838, ch. 386, secs. 1, 6; 1838, ch. 396, *secs.* 4, 7; and 1844, ch. 281, secs. 4, 6, 7. The conveyances to the State, referred to as exhibits filed with the bill of the State, were made in conformity with these Acts. And although, as a general principle, after-acquired property cannot be conveyed,

Boyd, *et al.*, *vs.* Ches. & Ohio Canal Co.

yet express legislative authority can be given for the purpose, and that has been done in this case by the Acts referred to, in express language or by necessary implication; the nett revenue and tolls being conveyed, which could only be derived by keeping the canal in repair, by means of the property, implements and provisions which have been levied upon. And it is submitted that the equity held by the canal company in the same, being all personal chattels and effects, cannot be taken under execution and sold in the manner advertised by the sheriff, and that the bill to restrain it was properly filed by the company. On this point, see 6 *Am. Law Reg.*, 27, *Coe vs. Hart.* 12 *G. & J.*, 14, *Lucas vs. McBlair.* 21 *How.*, 414, *Canal Co. vs. Vallette, et al.*

5th. These mortgages are sufficiently referred to and made part of the bill in this case. It refers to the bill filed by the State and its exhibits, and relies upon the same as parts of it, in the same manner as if fully set forth and exhibited with it. It prays that they may be considered as parts of this bill. These papers were within reach of the court below, and should have been inserted and incorporated in this record by the clerk. This is a sufficient reference to satisfy the conscience of the court, and the difficulty suggested by the case of *Fowler vs. Lee*, 10 *G. & J.*, 362, and *Eyler & Matthews vs. Crabb*, 2 *Md. Rep.*, 154, does not arise here. See, also, *Gresley's Eq. Ev.*, 98, 101, 102, 103. 2 *Daniell's Ch. Pr.*, 1009. But here the answers are not silent; they expressly admit the execution of these conveyances, and this removes all objection. 1 *G. & J.*, 503, *Warfield vs. Gambrill.*

GOLDSBOROUGH, J., delivered the opinion of this court.

The record in this case shows that the appellant obtained a judgment in the circuit court for Washington county, at November term 1855, against a certain William Brown, for $1435.51. He subsequently caused an attachment, instead of any other execution, to be issued on this judgment, under which certain proceedings were had, so that at the March term, 1858, of said court, a judgment of condemnation was entered by default against the appellee, as garnishee in the

attachment, for the whole amount of the judgment against Brown. A writ of *fieri facias* was issued on this judgment of condemnation, and levied on sundry articles of personal property claimed by the appellee. At the instance and upon the bill of complaint of the appellee, the circuit court issued an injunction prohibiting and enjoining the appellant and sheriff from making sale of the property taken in execution, until the further order of the court. At November term 1859, a motion was made by the respondent to dissolve the injunction. The court, upon the hearing, overruled the motion, and he appealed to this court.

After a careful examination of this case, and of the proceedings which were had on the common law side of the circuit court, we think that its equity power by injunction was improperly exercised.

The bill of complaint alleges that the appellee is "a corporation chartered by the laws of Maryland." It is thus brought within the operation of the 5th section of the Act of 1832, ch. 306, not only in reference to the mode of bringing the corporation into court as defendant, but, in our opinion, the word "process," used in that section, is sufficiently comprehensive to apply to the service of writs of attachment on a corporation as garnishee.

By the return of the sheriff in this case, which, by the Act of 1854, ch. 75, is made "evidence of the same, as is now the case in the service of other writs," two of the officers and directors of the company were served with notice of the attachment; and their official relation to the company is no where denied in the bill of complaint.

In the case of the *U. S. Insurance Co. vs. Shriver, et al.,* 3 *Md. Ch. Dec.,* 381, the chancellor correctly lays down the doctrine, that "if notice is given to a director officially, for the purpose of being communicated to the board, although such notice should not be communicated, the institution is bound by it."

But it is objected here that the sheriff's return was wholly defective, and not binding on the appellee. This would certainly be true if confined to his first return. But his applica-

tion to the court to amend it, being made within the term, as appears by the record, it was clearly within the power of the court to allow the amendment, and the amended return made by the sheriff, gratifies the requirements of the law.

The appellee complains that the rule of court as to filing interrogatories, and the service of them, was wholly disregarded. We deem it a sufficient answer to this allegation, to say that the plaintiff who files his interrogatories may waive them, and the rule of court is not enforced until the appearance of the garnishee and the plaintiff becomes informed of the defence relied upon.

Another objection relied upon is, that the judgment of condemnation upon which the execution issued, was by default, and that the Act of 1834, ch. 305, sec. 4, provides for a writ of inquiry before any judgment by default can be entered against a corporation. How far this Act refers to judgments of condemnation, or whether it relates only to suits instituted on original causes of action, where the amount actually due is unascertained, it is not material for us to decide. If there was irregularity in the entering of the judgment of condemnation, such irregularity will not justify the interference of a court of equity by injunction. We are fully sustained in this view by the decision of the Court of Appeals in the case of *Fowler vs. Lee*, 10 *G. & J.*, 358.

The appellee seeks to sustain its right to relief in equity by alleging that the property levied on is covered by sundry mortgages, executed by it to the State of Maryland, to secure the payment of a large indebtedness from it to the State. While we refrain from interfering with or deciding the right of the State to the property involved in this controversy, we do decide that a mortgagor cannot shelter itself or shield its property under the protection of a mortgagee. The relation existing between the appellee and the State is not that of trustee and *cestui que trust*. Whatever protection the State may be entitled to claim as mortgagee, must be asserted by itself, and cannot be considered in this case, instituted by the appellee alone. There is no precedent or authority for allowing the appellee (which holds merely as mortgagor) to

interpose any claim for relief on behalf of the State, as mortgagee.

*Order reversed, and bill dismissed with costs.*

(Decided June 20th, 1861.)