(Decided March 22nd, 1866.)

---

FAUST FREIDENRICH AND OTHERS, GARNISHEES OF SPRINGER & FRIES, *vs.* ROBERT MOORE AND CHARLES MOORE, USE OF ROSS CAMPBELL.

ATTACHMENT ON WARRANT: MOTIONS TO STRIKE OUT JUDGMENT NISI AND TO QUASH ATTACHMENT: IGNORANCE OF GARNISHEES: FRAUD, DECEIT AND IRREGULARITY: ACCOUNT, WHEN TO BE FILED: RETURN OF SHERIFF AS TO AMOUNT LAID: INQUISITION UNNECESSARY.—In a case of attachment on warrant laid in the hands of S., F. & Co., the defendants being returned *non est*, and the garnishees having failed to appear, a judgment of condemnation *nisi* was entered against the latter. After judgment the garnishees appeared and moved that the same be stricken out and set aside "for fraud, deceit and

Freidenrich et al. Garn. *vs.* Moore et al. use of Campbell & Co.

surprise and irregularity in obtaining the same," and subsequently moved, "to quash the attachment because the accounts on which the defendants are alleged to be indebted to the plaintiffs, were not produced and filed with the affidavits made by the plaintiffs before the Justice who issued the warrant of attachment," HELD :

1st. That ignorance on the part of the garnishees of the necessity of appearing in Court and contesting the attachment affords no sufficient ground for striking out the judgment.

2nd. That to justify the striking out of the judgment it would be necessary that clear and convincing proof should be given that the garnishees were prevented from making their defence by deceit practiced upon them by the plaintiffs, lulling them into the belief that the attachment had been or would be abandoned.

3rd. That it is immaterial whether the account which was produced was obnoxious to the objection urged against it by the garnishees or not, as the objection was not made in time.

4th. That the return of the Sheriff that he had laid the attachment in the hands of the garnishees, &c., without stating to what amount, is sufficient, the garnishees having been informed by the service of the writ what was the amount of the plaintiffs' account.

5th. That it is not usual or necessary for the Sheriff to state in his return for what amount he has laid the attachment in the garnishees' hands, although that form has sometimes been observed.

6th. That a failure of the garnishees to appear entitled the plaintiffs to the judgment *nisi*, which in such a case is a motion of course, and no inquisition is necessary.

APPEAL from the Superior Court of Baltimore City.

*Attachment on warrant*, issued on the 22nd of February, 1859, and laid in the hands of the appellants, as garnishees, trading in the city of Baltimore under the partnership name of Springer, Friedenrich & Co.

The facts of the case are fully stated in the opinion of this Court.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*J. Mason Campbell* and *Daniel M. Thomas*, for the appellants, argued.

Freidenrich et al. Garn. *vs.* Moore et al. use of Campbell & Co.

1st. That the attachment ought to be quashed for irregularity, because the indebtedness of the defendants upon which the attachment is based is not properly established.

2d. That the judgment of condemnation against the garnishees is irregular, as there is nothing in the cause upon which such judgment can be founded.

3d. That the judgment was obtained by fraud, deceit and surprise practiced upon the said garnishees by the plaintiffs, and ought therefore to be set aside.

1st. In support of the first proposition upon which the motion to quash is based, they referred to the Act of 1795, ch. 56, sec. 1, which requires the creditor applying for an attachment to produce before the officer before whom he makes his affidavit of indebtedness, "the bond or bonds, bill or bills, protested bill or bills of exchange, promissory note or notes, or other instrument or instruments of writing, account or accounts, by which the said debtor is so indebted," &c.

In this case the plaintiffs do not produce the accounts themselves, but simply refer to them, as follows, viz:

1858, June 10th, To am't as per act. stated...$1,503 35
"      "    16th,      "       "       "     ...   823 83
"    Aug. 21st,      "       "       "     ...   812 85
"    Sept. 23d,      "       "       "     ...   812 91
"    Oct.  5th,      "       "       "     ...   593 60

$4,546 54

And it is contended that this does not gratify the requirements of the law.

The plaintiffs admit by the statement that accounts had been stated between them and the defendants, and yet do not produce them. *Wood vs. Gault & Emory,* 2 *Md. Ch. Dec.,* 441. *Burke vs. Brown,* 2 *Atk.,* 399. *Story's Eq. Pl.,* sec. 798. *Barger vs. Collins,* 7 *H. & J.,* 218.

*Turner vs. Jenkins,* 1 *H. & J.,* 163, 164. ·This defect renders the attachment a nullity, and it ought to be quashed. *Dawson vs. Brown,* 12 *G. & J.,* 53. *Garnees. of Wolf vs. Tinges,* 7 *Md. Rep.,* 215. *Lamden vs. Bowie,* 2 *Md. Rep.,* 334. And the garnishees could make the motion to quash at the time they did. 3, *Gill,* 320. A defect in the short note may be taken advantage of. 10 *G. & J.,* 386. 6 *G. & J.,* 348. 14 *Md. Rep.,* 565. *Graff vs. Gamble,* 18 *Md. Rep.,* 364. *Palmer & Hamilton vs. Oliver,* 11 *G. & J.,* 139, 140, 143.

2nd. They contend that the irregularity in the proceedings is fatal to the judgment sought to be enforced. The basis of the judgment against the garnishees is, first, the fact of a debt due by the defendants to the plaintiffs; and second, the fact of the garnishees having goods or credits in hand liable for that debt. These two facts must co-exist in reality or by construction of law to warrant a judgment against them. To establish the first of these essentials the original accounts, proved according to law, ought to be produced; and the non-production of them renders it impossible to extend any judgment against the defendants. And until a judgment is entered up against the defendants no proper judgment can be extended against the garnishees. The other essential to a proper judgment against the garnishees is proof of their having in hand funds or property of the defendants.

The only effect of a default is to warrant the Court to treat the plaintiffs' allegations as true, and to give judgment accordingly. But the proceedings nowhere show any allegation or averment against the garnishees, which by reason of their default may be taken *pro confesso.*

It is nowhere averred that they have sufficient funds in hand to pay the defendants' alleged indebtedness to the plaintiffs, nor is this want of averment anywhere supplied by proof.

Freidenrich et al. Garn. *vs.* Moore et al. use of Campbell & Co.

The right of the Court to adjudge the garnishees to have property in their hands only exists after interrogatories have been propounded to the garnishees, and they have failed to answer them. And as no interrogatories were put to the garnishees, the action of the Court is not in pursuance of the Act of Assembly to which the record refers, and is therefore erroneous.

The attachment law being in derogation of the common law, is to be construed strictly. And the Courts will not, by construction, add new provisions to it. *Brown vs. Somerville,* 8 *Md. Rep.,* 444. *Fitzhugh vs. Hellen,* 3 *H. & J.,* 206.

In support of what has been stated above in regard to the irregularity in the proceedings, and the defective form of the Sheriff's return, reference is made to the following authorities: 7 *Viner. Ab.,* 461, *Tit. Default, P.* 3. 3 *Bla. Com.,* 274. *Locke on Attachment,* (79 *Law Lib., p.* 60, 58.) 2 *Harr. Ent.,* 79, 80, 164, 215. *Boyd vs. Ches. and O. Canal Co.,* 17 *Md. Rep.,* 196. *Drake on Atta.,* sec. 461. Act of 1715, ch. 40, sec. 4. *Turbill's Case,* 1 *Wms. Saund.,* 67, *n.* 1.

3d. But treating the judgment as final against the garnishees, and in other respects regular, it will be contended that it was obtained by fraud, deceit and surprise practiced upon them by the plaintiffs, and ought to be set aside. In support of this position see depositions of the garnishees' witnesses.

Many of the facts stated in these depositions are denied in the depositions filed on the part of the plaintiffs, and their truth or falsity are matter for argument.

If it appear from the depositions in this case that the judgment against the garnishees was obtained through "fraud, deceit, surprise or irregularity," the Court's authority to set it aside is recognized by the Act of 1787, ch. 9, sec. 6.

*Reverdy Johnson and P. McLaughlin* for the appellees.

The first motion of the garnishees (February 27th, 1860,) alleges no grounds for the action of the Court, and, therefore, we pass it by without further notice.

We object to the motion of the 8th of March, 1860, because it does not set forth how or in what manner the garnishees were defrauded, deceived or surprised, or of what the irregularity complained of, consisted. If the motion of the 8th of March is sufficiently expressed, the case endeavored to be made by the affidavits filed in its support, would appear to raise the question as to whether the plaintiffs in obtaining the judgment committed fraud or deceit on the garnishees, or obtained it in a manner by which they could legally say they were surprised. The motion of the defendants of the 12th of March, 1860, goes merely to irregularity in not producing the account before the magistrate at the time of the filing of the affidavit.

The whole we think may be said to resolve themselves into two propositions :

. I. Is the account produced and filed such an account as is contemplated by our attachment laws? *Acts of* 1795, —(*ch.* 56, *sec.* 1.) *Dawson vs. Brown,* 12 *G. & J.,* 53, 59. *Lee & Tinges,* 7 *Md. Rep.,* 215, 229. 2 *Greenleaf on Ev.* § 127, *and authorities there stated. Cowen's Treatise,* 478. 1 *Chit. on Pl.* 358. *Truman vs. Hurst,* 1 *Term.,* 40. *Highmore vs. Primrose,* 5 *Maule & Lebro,* 65. 1 *Saunders, Pl. & Ev.* 31, 32.

The judgment was entered regularly and in accordance with the practice of the Court. *Act of* 1715.—*ch.* 40, *sec.* 3, *Evans, Pr.* 99. *Sherwood vs. Mohler,* 14 *Md. Rep.,* 564. *Boyd vs. The Ches. & Ohio Canal Co.,* 17 *Md. Rep.,* 195, 211. *Walters & Harvey vs. Munroe,* 17 *Md. Rep.,* 501, 505.

Then as to the question of fraud and deceit. Is the evidence on this point sufficient to authorize the Court to disturb the judgment ? The garnishees pretend that on

three several occasions they have been deceived by the plaintiffs.

1st. On the day the attachment was laid.

2nd. In April, 1859, when Faust Freidenrich, as he says, called on Robert Moore to ascertain whether he would consent that the garnishee might be interrogated before a Justice of the Peace.

3rd. When in August, 1859, as Springer says, Robert Moore promised to abandon the suit if Moses H. Springer would testify in the case of *Moore et al. vs. Stadler et al.*

The counsel for the appellees referred to and commented upon the testimony on the part of the garnishees, and argued that there were no grounds upon which the judgment could be disturbed.

In Maryland it is laid down as a settled principle of law, that every person is bound to take care of, and protect and vindicate himself in due season and in proper place. *Gott vs. Carr*, 6 *G. & J.*, 309--312.

It is also a well settled general rule, that a recovery at law, will not be disturbed in Chancery, unless its justice can be impeached by facts, or on grounds, of which the party seeking the aid of Chancery could not have availed himself at law, or was prevented from doing it, by fraud, or accident, or the act of the opposite party, unmixed with any negligence, or fault of his own. *Gott vs. Carr*, 6 *G. & J.*, 309--312. *Creisch vs. McCauley*, 7 *Gill*, 189. *Wendwart vs. Allen*, 13 *Md. Rep.*, 196--200. 5 *How.* 141--142. *Kent vs. Richards*, 3 *Md. Ch. Dec.*, 392--307. *Keighler vs. Savage Man. Co.*, 12 *Md. Rep.*, 383--415. *Gardner vs. Jenkins*, 14 *Md. Rep.*, 58. *Fowler vs. Fowler*, 10 *G. & J.*, 358--362--364. 1 *Story's Eq.*, sec. 105. 2 *Story's Eq.*, sec. 887. *Marine In. Co. vs. Hogsdon*, 7 *Cranch.* 332.

A judgment it is said, is the highest exercise of judicial power, and as such, to be interfered with, or questioned only with great delicacy and circumspection, and were this

not so, our judicature instead of being a guarantee of stability and certainty would be worse than a farce, would be a snare and a trap to the confiding. *Keighler vs. Savage Man. Co.*, 12 *Md. Rep.*, 383—415.

We submit that the evidence not only shows that the garnishees have the money of the defendants in their hands, but that they have it in such a way as would justify a Court of Equity in charging them, as trustees for the creditors, with the value of the coal oil factory.

1st. The garnishees are related by blood or by marriage. The garnishees Faust Freidenrich and Abraham Freidenrich are brothers, and are both brothers-in-law of Springer, the garnishee. Faust Freidenrich is father-in-law of the defendant, Fries, and Springer the defendant, is a brother of Springer, the garnishee. Evidence of relationship in such cases as this is greater evidence of confederation than of affection. *Sands et al. vs. Codwise*, 4 *Johns.*, 384. *Robinson vs. Moore*, 25 *Maine*, 192—198.

2nd. In 1857 the defendants were represented by the garnishees to be worth from $50,000 to $60,000 over their liabilities.

3rd. In a few months afterwards, the defendants declare themselves insolvent, owing $26,000 ; and the proceeds of the sales and collections, under the deed of trust, did not amount to $1,000.

4th. Faust Freidenrich, one of the garnishees, goes to see the defendants, promises to secure the debts of the plaintiffs, and on his return reports that he has secured the garnishees, but in reference to the plaintiffs, he said he could not attend to other persons' business.

We allege that the garnishees have aided the defendants to hinder, delay, or defraud their creditors ; and, in doing so, have obtained possession or title to a large portion of the property of the defendants ; and in support thereof, refer your Honors to the testimony.

Freidenrich et al. Garn. *vs.* Moore et al. use of Campbell & Co.

Upon a full view of the whole case, we submit that there is no ground, legal or equitable, which will authorize the Court to disturb the judgment, but on the contrary, when we consider all the equities which the plaintiffs have shown not only as against the defendants, but also as against the garnishees, we presume it would require much more than the conflicting evidence of the garnishees, to bring the Court to such a conclusion.

But we suppose the evidence sufficient to authorize the Court on a bill filed on the equity side of the Court by the creditors of the defendants, to decree that the garnishees should stand as trustees for the benefit of creditors of the defendants, as to the value of the coal oil factory.

Fraud will not be presumed, and though it may not be necessary to prove it by direct and positive testimony, yet the circumstances upon which the presumption of its existence is to be founded, should lead plainly and directly, and by strong implication, to that conclusion. *Duvall vs. Coale*, 1 *Md. Ch. Dec.*, 168–169. In questions of fraud, any fact, however slight, if at all relevant to the issue, will be admitted as evidence, though the circumstances when combined, must be so strong as to satisfy the jury of the fact to be established. *Waters vs. Dashiel*, 1 *Md. Rep.*, 474.

There is no ascertained rule of law which fixes and determines what acts or declarations of a party shall, in all cases, be required to establish fraud ; but, on the contrary, the badges of fraud may and do vary according to the intellectual capacity and moral depravity of the perpetrator, the end designed to be obtained and the means by which it is to be accomplished. *Richards vs. Grome*, 7 *Gill*, 366–377. *Rollins vs. Moore*, 25 *Maine*, 192--198--200. *Parkham vs. Welsh*, 19 *Pick.*, 231--234.

In answer to the argument on the part of the appellants that the actual accounts required by the Act of 1795, ch. 56, to be produced before the officer, before whom the

HARVARD LIBRARY

affidavit of indebtedness is made, were not produced but referred to only, and that the requirement of the law were not thereby gratified,—they argued : That an account stated may be proved by parol without written evidence of any kind ; and that a balance agreed upon and reduced to writing by the plaintiff, is sufficient to maintain an action in an account stated and cited. 1 *Ch. Pl.* 358. 2 *Greenlf. on Ev.* § 127. *Ev. Md. Pr.*, 87. *Dawson vs. Brown,* 12 *G. & J.*, 53.

They further argued in answer to the appellants :—That the short note takes the place of a declaration. *Thrasher vs. Everhart,* 3 *G. & J.*, 234. *Smith vs. Gilmor,* 4 *H. & J.*, 177. And that the Act of 1795, ch. 56, allows a plaintiff, where the defendant does not appear to recover the amount of his demand from the garnishees to the value of the assets in his hands.

BARTOL, J., delivered the opinion of this Court.

A writ of attachment or warrant was issued in this case, on the 22nd day of February, 1859, at the suit of Robert and Charles Moore, (the appellees,) for the purpose of recovering the sum of $4,546 54, alleged to be due them by L. H. Springer and Charles Fries, non-residents, the writ was on the same day "laid in the hands of the appellants trading in Baltimore under the name of Springer, Freidenrich & Co.," and was returnable to the ensuing May Term of the Superior Court. At that term the writ having been returned, and the garnishees not appearing, a judgment of condemnation *nisi* was entered against them on the 9th of May. No other proceedings were had until the 27th day of February, 1860, when Mr. Campbell appeared for the garnishees and filed a motion to strike out the judgment, but assigned no cause in support of the motion ; afterwards, on the 8th day of March, 1860, the same motion was renewed on the part of the garnishees,

asking that the judgment be stricken out and set aside, "for fraud and deceit, surprise and irregularity in obtaining the same." Accompanying this motion were the affidavits of Henry Bookman, Frederick Krager, Abraham Freidenrich and Moses H. Springer.

On the 10th day of March, 1860, motions were entered, one on behalf of the garnishees and the other on behalf of the defendants, "to quash the attachment because the accounts on which the defendants are alleged to be indebted to the plaintiffs, were not produced, and filed with the affidavit made by plaintiffs before the Justice who issued the warrant of attachment." On the 13th day of March the Court passed an order suspending execution upon the judgment till the further order of the Court, provided a bond should be filed by the garnishees as prescribed. The bond was filed accordingly. Thereafter a number of affidavits were filed on behalf of the garnishees, and of the plaintiffs, touching the alleged fraud and surprise in obtaining the judgment; and on the 16th day of June, 1862, the Superior Court overruled the motions to strike out the judgment, and to quash the attachment, from which decision this appeal was taken.

It appears from the record that the objections to the judgment rest upon two grounds:

1st. Fraud, deceit and surprise alleged to have been practiced by the appellees, in obtaining the same.

2nd. Irregularity in the judgment itself.

The first is to be determined by the testimony. This has been carefully examined, and the conclusion we have reached, on this branch of the case, is that the allegation of the appellants, in this respect, is not established by the evidence.

It conclusively appears that the attachment was served on the appellants at their store on the 22nd day of February, 1859. This fact is established by the Sheriff's return, and

is corroborated by other proof. It appears that when the Sheriff went to serve the writ, the appellants, Faust Freidenrich and Moses H. Springer were at the store of the appellees, and their book-keeper, Bookman, went there to inform them of the Sheriff's visit. They were alarmed by the intelligence, and they state in their affidavits that Robert Moore informed them that it was an attachment he had laid in their hands against Springer & Fries, " but that it did not amount to anything," and Faust Freidenrich states that Moore further said to him that he (Moore) " only did it to effect a settlement." Robert Moore in his affidavit expressly contradicts this statement, and swears that what he said to them was " that they might not be so much alarmed about it, that there was time enough for them to attend to it, but that notwithstanding, they both left his store," and he states, " that it is not true that upon that or any other occasion he told them or either of them that the writ of attachment was of no consequence, or that he had caused the same to be issued to effect a settlement with Springer & Fries."

Faust Freidenrich further states in his affidavit that, in April, 1859, he asked Robert Moore if it was necessary to employ a lawyer, and that Moore told him that he did not want them to employ a lawyer in the case, that the attachment would not be pushed, and that all he wanted was, not to make the garnishees pay the money, but to effect a settlement through their influence with Springer & Fries." This statement stands on the testimony of Faust Freidenrich alone, and is *positively contradicted* by the affidavit of Robert Moore.

The witness, Frederick Krager, states that in August, 1859, Robert Moore asked Moses H. Springer to go before the Commissioner in Baltimore to testify in a suit of the appellee's against Springer & Fries, then being prosecuted in Cincinnati, which Springer at first declined to do ; but

Moore told him if he would go before the Commissioner and testify, the case here (that is this attachment case,) should be settled.    Moses H. Springer states the same thing.    As to this evidence, it may be remarked that it is contradicted by Robert Moore's testimony, and is inconsistent with the facts established by other proof showing that Springer was a reluctant and unwilling witness, at first refusing altogether to appear before the Commissioner, and when testifying, refusing to produce the books of account between his firm and Springer & Fries, called for during the examination, and employing counsel to resist the demand for the books.    Besides the statement that in August, 1859, Robert Moore proposed to settle this attachment case on condition that Springer would testify before the Commissioner is inconsistent with the other statements that in February, when the writ was served, and in April, Moore had told them the attachment amounted to nothing, and would not be pushed.    In the affidavits both of Krager and Springer, they state that Springer urged as his objection to going before the Commissioner that the case was being tried here, (in Baltimore) which shows that he knew this attachment suit had not been abandoned.

It is possible that the garnishees were ignorant of the necessity of appearing in Court and contesting the attachment.    In one of the affidavits it is stated that they said, long afterwards, they thought there would be some advertisement on the subject in the newspapers, and in this way their failure to appear and defend sooner, if they intended to do so, may be susceptible of explanation.    But that is not sufficient ground for striking out the judgment.    To justify such a proceeding it is necessary that clear and convincing proof should be given that they were prevented from making their defense by deceit practiced upon them by the appellees ; lulling them into the belief that the

attachment had been or would be abandoned. The proof on this subject is not in our opinion sufficient to warrant the Court in so declaring. There is much conflict in the statements of the parties which it is impossible to reconcile ; nor do we deem it necessary to discuss in this opinion all the testimony in the cause. We have stated our conclusion from the whole evidence.

It must not be lost sight of that the process was regularly served upon the garnishees by the Sheriff ; at the return of the writ, the judgment complained of was entered in open Court, and stood upon the public records as notice to them that unless they appeared and made defence during the term, the judgment would become absolute. If they were ignorant of the law and for that reason failed to appear, it is their misfortune, from the consequences of which this Court cannot relieve them. To strike out a solemn judgment on such grounds would be establishing a principle most dangerous in its consequences and having no precedent to support it. See *Peters vs. League*, 13 *Md. Rep.*, 58, *and Windwart vs. Allen, Ibid*, 196.

The other ground for the motion is the alleged irregularity in entering the judgment of condemnation. This is supposed to consist in the failure to produce before the Justice, who issued the warrant, such an account as was required by the Act of 1795, ch. 56, and its supplements.

An account was produced, which if it were material to pass upon the question, we are inclined to think would be held to be a sufficient account under the Act of Assembly even if the objection had been made in time. See *Dawson vs. Brown*, 12 *G. & J.*, 53, 59. *Lee & Brewster vs. Tinges*, 7 *Md. Rep.*, 215, 229. Upon that question, however, it is not material for us to express any conclusive opinion, because even if the account produced were obnoxious to the objection urged by the appellants, the objection was not

Freidenrich et al. Garn. *vs.* Moore et al. use of Campbell & Co.

made in time. *Sherwood vs. Mohler*, 14 *Md. Rep.*, 564. See, also, 13 *Md. Rep.*, 196. 17 *Md. Rep.*, 195. *Id.*, 501. This would not be such an irregularity as existed in *Graff vs. Gambrill*, 18 *Md. Rep.*, 364, where the judgment of condemnation was entered before the return of the writ.

Other supposed irregularities in the judgment were suggested by the appellants in their argument in this Court. These it was contended consisted in the defective service and return of the writ by the Sheriff; and in the entry of the judgment against the garnishees without any judicial ascertainment of the fact that they had in their hands goods, chattels and credits of the defendants to the amount of the plaintiffs' claim or to any amount. The return of the Sheriff was that he had laid the attachment in the hands of the garnishees, &c., without stating to what amount. But such a return is sufficient; the garnishees were informed by the service of the writ, what was the amount of the plaintiffs' demand, and it is not usual or necessary for the Sheriff to state in his return for what amount he has laid the attachment in the garnishees' hands, although that form has sometimes been observed.

A failure of the garnishees to appear entitled the plaintiffs to the judgment *nisi*, which in such case is a motion of course, and no inquisition is necessary. *Evans' Practice*, 87, 99. 13 *Md. Rep.*, 58, *Id.*, 196. 14 *Md. Rep.*, 564. 17 *Md. Rep.*, 195, *Id.*, 501.

A reference to these authorities will show that the judgment was entered regularly in accordance with the practice. The judgment of the Superior Court on the motions will therefore be affirmed.

*Judgment affirmed.*

(Decided March 22nd, 1866.)