(Decided June 1st, 1864.)

---

JOSHUA McCAULEY AND OTHERS, *vs.* THE STATE OF MARYLAND.

STATE'S ATTORNEY: CODE, VOL. 1, ART. 11, SEC. 23: PLEAS IN ABATEMENT.— Suits for the State must generally be brought by the State's attorney, but there are exceptions in the law, (1st Code, Art 11, sec. 23,) and a plea in abatement, on the ground that such suit is not brought by the State's attorney, (if available at all,) should negative those exceptions.

There is no precedent for such a plea in abatement. It does not affect the jurisdiction, the form of the action, or the parties.

If the executive, or other officer of the State, for peculiar reasons, have authorized the institution of the suit, it would be informal or irregular in this incidental manner to decide upon the constitutional or legal power of such officers to do it.

McCauley, et al. *vs*. State.

TAXES, COLLECTION OF: THE ACT OF 1852, ch. 110, (applicable to Howard County,) SEC. 8, provides, that if the tax-payers fail to pay their taxes as thereinbefore authorized, (i. e. to the treasurer, *secs*. 7, 8,) by the last day of March in each year, the commissioners shall immediately place the arrears of taxes not paid as aforesaid, into the hands of the sheriff, &c.; who shall collect and complete the same within nine months from the time said taxes are placed in his possession; HELD:

That the law, as cited, does not require any *order* of the commissioners; it seems to impose on them a manual duty—the delivery of the tax list to the sheriff. If this delivery was made by them *actually*, or *constructively*, after the bond was executed and approved, the obligation to collect and account attached as a legal consequence.

If the tax lists came into the sheriff's hands before the day of executing the bond, in anticipation of, and preliminary thereto, it was a conditional delivery, which was consummated by the execution of the bond.

PLEADING: DEMURRER.—Other pleas were filed, which, divested of their technical language, aver, that J. M., (the sheriff,) *after* the execution, approval and delivery of the bond, did not receive for collection, and did not in fact collect, and was not entitled to collect, any State taxes whatever, and that said bond was not approved or accepted by the commissioners of Howard County, until the 22nd day of April 1856; and that after said approval and acceptance, no arrears of State taxes whatever *were placed* in the hands of said J. M., *nor was he answerable for any arrears*. That long prior to the approval of the bond, the commissioners placed in the hands of the said J. M., all the arrears of taxes due to the State on the 1st of March 1856, and he did not after such approval and acceptance receive for collection, nor was he answerable under the terms of said writing for any arrears of taxes, whatever, due to the State. HELD:

That these were double pleas, presenting issues of fact and issues in law, and as such were liable to demurrer.

The 9th plea averred, "that the said writing is not the deed of the defendants, because the same was not given by the said J. M., *as sheriff of Howard County*." HELD:

1st. That the duty imposed upon him by the Act of 1852, ch. 110, was not a duty appertaining to the office of sheriff, and the words in the Act, "Sheriff of Howard County," are used as a *descriptio personæ*, and not to indicate that the bond, as collector, was to be executed in his official character as sheriff.

2nd. If the fact was, that the person described as collector was not the sheriff of Howard County, it should have been pleaded, that the person appointed collector, was not in fact the collector of Howard County, which would have made it necessary for the Court to decide whether any other person than the sheriff of that county could legally act as collector.

3rd. It could not in any manner add to the validity of the bond, to describe the principal obligor by his other office; it was not necessary to show on

its face a compliance with the Act of Assembly in that respect, and the absence of such description does not diminish its legal effect.

COLLECTOR'S BONDS, ACTION ON: STATUTES, CONSTRUCTON OF: ACTS OF 1794, CH. 53; 1841, CH. 23, SEC. 45; 1845, CH. 5.—Although the foregoing Acts are in *pari materia*, they are to be construed so as to protect the interests of the State, and not defeat their object; and a provision clearly directory, and applicable to another class of bonds, if not complied with, is not to be made a defence to the cause of action in a suit on a collector's bond.

EVIDENCE: OFFICE COPIES OF INSTRUMENTS MADE EVIDENCE BY STATUTE, are *prima facie* evidence of all that is necessary to authorize their registration, when it appears that they have been duly recorded.

——: ——: BURDEN OF PROOF.—To an action on such bond the defendants pleaded, that said bond "was never probated, approved and recorded according to the force and effect of the Acts of Assembly in such case made and provided, and so the said defendants say, that the said supposed writing obligatory, is not their act and deed;" HELD:

That the production of the office copy of the bond furnished a *prima facie* proof of that instrument, and the burden of sustaining the facts pleaded in bar was on the defendants.

And that the plea is not sustained by evidence, "that no probate of said bond is recorded to have been taken or had," nor by the evidence of the subscribing witness, that he "has no recollection that he was ever called on to prove, or did prove before said commissioners, or any one else, the execution of said bond so attested by him as subscribing witness, nor does he recollect when the bond was signed, or any other circumstance; but, that he witnessed its execution, he is certain, as he recollects his signature."

APPEAL from the Circuit Court for Howard County :

This suit was instituted by the appellee against the appellants, on the 26th of August 1862, upon a collector's bond, which, as well as the evidence, are sufficiently set forth in the opinion of this court.

The defendants first pleaded in abatement, that the action was not instituted by the State's Attorney for Howard County, which was overruled by the Court. The defendants then filed the following pleas:

*1st Plea.* The defendants above named, by R. J. Brent, their attorney, crave oyer of the writing obligatory aforesaid, and it is read to them, and thereupon they say, that the supposed writing obligatory on which this suit is brought, was never probated, approved and recorded, ac-

cording to the force and effect of the Acts of Assembly in such case made and provided, and so the said defendants say, that the said supposed writing obligatory is not their act and deed, and this they are ready to verify.

*2nd Plea.* And for a second plea, the defendants say, that the said Joshua McCauley named in the condition of said writing obligatory, did in all respects whatever, perform, fulfill and discharge all and singular the obligations and duties required of him, according to the force and effect of said condition annexed to said writing obligatory, and this they are ready to verify.

*3rd Plea.* And for a third plea, the said defendants say, that the board of commissioners of Howard County never ordered any taxes to be placed into the hands of the said Joshua McCauley, whatever, after the execution, approval and delivery of said writing obligatory, and this they are ready to verify.

*4th Plea.* And for a fourth plea, the defendants say, that the said Joshua McCauley did well and truly perform the condition subscribed to said writing obligatory, in all things whatever, and did, before the bringing of this suit, well and truly pay over to John T. B. Dorsey, the State's Attorney for Howard County, all and singular the State taxes collected by the said Joshua McCauley, as collector aforesaid; and the defendants further say, that at the time of such payment, the said Dorsey was then and there duly authorized to receive said taxes, so paid over as aforesaid, and this they are ready to verify.

*5th Plea.* And for a fifth plea, the defendants say, that the said Joshua McCauley, after the execution, approval and delivery of said supposed writing obligatory, did not receive for collection, and did not, in fact, collect, and was not entitled to collect any State taxes whatever, and did in all respects whatever fulfill and perform, all and singular, the duties required of him by force of the condition annexed to said writing obligatory, and this the defendants are ready to verify.

*6th Plea.* And for a sixth plea, the defendants say, that the said supposed writing obligatory, was not approved or accepted by the commissioners of Howard County, until the 22nd day of April 1856, and that after said approval and acceptance, no arrears of State taxes whatever, were placed in the hands of said Joshua McCauley by said commissioners, nor was he answerable for any arrears of State taxes whatever, under the terms and conditions of said writing obligatory, after such approval, and this they are ready to verify.

*7th Plea.* And for a seventh plea, the defendants say, that long prior to the approval and acceptance of this supposed writing obligatory, aforesaid, the commissioners of Howard County placed in the hands of said Joshua McCauly all the arrears of taxes due to the said State on the 1st day of March 1856, and the said Joshua McCauly did not after such approval and acceptance of the said writing obligatory, receive for collection, nor was he answerable under the terms of said writing, for any arrears of taxes whatever due to the State, and this they are ready to verify.

*8th Plea.* And for an eighth plea, the defendants say, that the arrears of taxes, to recover which this suit is instituted, were not assessed and levied by the commissioners of Howard County, on or before the 10th day of April 1855, and the said writing obligatory is not chargeable with, or answerable for, the said arrears of taxes claimed in this action, and this the defendants are ready to verify, &c.

*9th Plea.* And for a ninth plea, the defendants say, that the said writing obligatory, is not the deed of the defendants, because the same was not given by the said Joshua McCauley, as sheriff of Howard County, and this the defendants are ready to verify.

The action taken upon these pleas, and the nature of the defendant's exceptions, are set forth in the opinion of this Court.

McCauley, et al., *vs.* State.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Robert J. Brent,* for the appellants:

We shall maintain that the Court erred in their judgment on the demurrer, because the Legislature have expressly required these suits to be brought by the State's attorney, who is an officer provided in the Constitution and entrusted with the State's business. 1 Code, Art. 81, sec. 80. And no functionary like the Comptroller, can delegate to a private attorney the responsibilities of the State's business; the suit was therefore unauthorized. Constitution, Art. 2, sec. 21. Id., Art. 5.

The provision in the Act of 1829, ch. 90, secs. 2 and 3, which may have authorized a special attorney to sue, is omitted in the subsequent revisory law of March (Extra Session) 1841, ch. 23, sec. 48, as well as by Art. 81, sec. 80, of the Code. Even the Governor, while authorized to employ counsel, could not authorize him to bring such a suit as this in the face of the Constitution and the Code, which regard the public duties of the State's Attorney. See also, 1 Code, pp. 55, 56. Act of 1862, ch. 177.

The demurrer admits the truth of the plea, and it was error to sustain that demurrer. The defendants then pleaded nine pleas, six of which were overruled under demurrers, and the question now arises, whether all of these pleas are defective.

The third plea avers that after the execution and delivery of the bond in suit, the commissioners of Howard County, never ordered any taxes whatever to be placed in the hands of said McCauley. Is not that a good defence? It is clear that the only person authorized to collect these taxes by the Act of 1852, ch. 110, is the sheriff, and there is nothing on the record, as disclosed in the pleadings, to show that the principal in this bond *was the sheriff,* and as such, legally chargeable for the taxes; but assuming for the argument that he was the sheriff, his sureties are not

71    v. 21

bound unless the taxes are placed in his hands after the delivery of their bond. The principle of law is, that the sureties are only liable for the acts of a legally appointed collector, and after he has duly bonded. See on this point *Hewitt vs. State*, 6 *H. & J.*, 96. *Bruce, et al., vs. State*, 11 *G. & J.*, 382. *Milburn vs. State*, 1 *Md. Rep.*, 11, 15. *Burgess vs. Lloyd*, 7 *Md. Rep.*, 178. If the taxes were in his hands at the date of delivering his bond, his sureties were not bound, though he collected them afterwards. *Farrar, et al., vs. U. S.*, 5 *Peters*, 373. *U. S. vs. Giles*, 9 *Cr.*, 212.

That it was the duty of. the collector, (supposing him to be sheriff,) to apply to the clerk of the commissioners for the amount and list of taxes in arrear, is decided in *State vs. Scharff*, 3 *G. & J.*, 95.

The 7th plea involves the same principle, but shows that prior to the approval and acceptance of said bond, the commissioners had placed in McCauley's hands, all the State taxes due on 1st March 1856, and that after said approval, &c., he received no taxes, nor was he answerable under said bond for any arrears of State taxes. In fact, the third, fifth, sixth and seventh pleas, present the defence arising out of the 8th sec. of the Act of 1849, ch. 427, in different forms to meet the facts, and if any one of them is a valid defence, the judgment must be reversed.

The 8th plea maintains that the levy must be legally made on the day appointed, and the commissioners cannot make a legal levy after that day has passed, and if so, the sureties are only responsible for taxes legally levied. *Ellicott vs. Levy Court*, 1 *H. & J.*, 359. *Quynn vs. State*, 1 *H. & J.*, 36. *State vs. Merryman*, 7 *H. & J.*, 79. *Hewitt vs. State*, 6 *H. & J.*, 96. *State vs. Dorsey*, 3 *G. & J.*, 90, 91. The bond of a supervisor is void, if appointed on a different day from that required by law. *Kerr vs. State*, 3 *H. & J.*, 560. The cases in 9 *Gill*, 102, and 1 *Md. Rep.*, 11, 15, and 27, are distinguishable from this, because the reasons of the judge as given in those cases do not apply to

our Act of 1852, ch. 110, with reference to which the sureties contracted, and which required the sheriff to close by 1st January, (see 9th sec.,) therefore the sureties are damnified if any delay in levying taxes or giving them to him occurred after 31st March. *State vs. Wayman*, 2 *G. & J.*, 279. All bonds must be construed by the laws in force, when they were executed. *Union Bank vs. Ridgely*, 1 *H. & J.*, 433. *State vs. Wayman*, 2 *G. & J.*, 278, 279.

The 9th plea states that McCauley never gave said bond as sheriff, and this is a good defence, as he could only legally collect the taxes *qua* sheriff. 1849, ch. 427, secs. 8, 9, 10, 11. The State should have replied to this plea, that McCauley was sheriff, and the said bond was given by him, either as his sheriff's bond, or as an additional bond under the 11th sec. The demurrer confesses that it was not given as sheriff, and therefore admits that he was not legally authorized to collect the taxes, and if not, can his sureties be liable? He would be estopped by not denying the execution, approval and recording of the bond, and the estoppel is only on the fact recited, viz: that he was collector of taxes, but that shows on its face no such office for Howard County, and is like *Morgan vs. Morgan*, 4 *G. & J.*, 395. *Tucker, et al., vs. State*, 11 *Md. Rep.*, 329. *McCabe, et al., vs. Ward*, 18 *Md. Rep.*, 509.

The errors are equally abundant after the jury were sworn. We see that the bond is not on its face given by the sheriff, as required by the Act. The issues joined on our first plea, required proof of probate of the bond: If the issue touching the probate was immaterial, still the defendant must prove it, as he had not demurred to the plea. *Williamson vs. Mitchell*, 9 *Gill*, 77. *Marshall vs. Haney*, 9 *Gill*, 258. The Court erred therefore in not granting the defendants' prayer, as the evidence of Jenkins and Sands negatived the probate avered by plaintiff's replication to our first plea.

The Court further erred in granting the plaintiff's prayer, leaving to the jury nothing but the fact of recording the bond. The plaintiff had replied, and averred recording,

probate and approval of this bond, and the Court disregarding the issues, virtually decide that the plaintiff need prove only a part of the issue joined, because the approval and probate were, in the judgment of the Court, immaterial. But the probate was material to the validity of the bond, as the Acts of Assembly are in *pari materia* and require it, as well as the approval of the commissioners. 1794, ch. 53, sec. 2. 1841, (Extra Sess.,) ch. 23, sec. 45. 1845, ch. 5, secs. 1 and 2. These Acts are in *pari materia*, and form one system. *Owens vs. Collinson*, 3 *G. & J.*, 25. *Dugan, et al., vs. Gittings*, 3 *Gill*, 138. *Ranoul vs. Griffie*, 3 *Md. Rep.*, 60.

The State never meant the sheriff to collect taxes on a bond which was not proved, approved and recorded. There can be no legal delivery of such a bond until it is probated, approved and recorded. It is true that, not denying the execution of the bond, its approval may be inferred from its reading, as in the case cited by the appellee; but this inference does not arise where the approval is to be by another forum than that in which it is recorded. *Burgess vs. Lloyd*, 7 *Md. Rep.*, 178, 200. *Bruce vs. State*, 11 *G. & J.*, 382. *Milburn vs. State*, 1 *Md. Rep.*, 11.

*Thomas Donaldson*, for the appellee :

I. The first point made by the defendants at the trial, was raised by a plea in abatement, on the ground that the action was not instituted by the State's Attorney for Howard County, on which the special judge decided, that said plea was not sufficient, and required the defendants to answer over. The appellee contends, that the judgment of the Court was correct, on the following grounds:

The plea of abatement must be either to the framing of the writ or declaration, or to the disability of the plaintiff or defendant, and cannot be to the attorney, by whom the action is conducted. *Stephen on Pl.*, 47, 48, 430. 1 *Bac. Abr., Abatement.* 1 *Chitty's Pl.*, 446, *et seq.*

When the appearance of an attorney is entered on the

record, it is considered as done by authority of the client, and he is responsible to the client alone for the discharge of his duty, whether employed by the client or not. *Henck vs. Todhunter*, 7 *H. & J.*, 275. *Fowler vs. Lee*, 10 *G. & J.*, 358. *Munnickhuysen vs. Dorsett*, 2 *H. & J.*, 374. *Bethel Church vs. Carmack*, 2 *Md. Ch. Dec.*, 143. *Thornburg vs. Macauley*, 2 *Md. Ch. Dec.*, 425. *Kent vs. Ricards*, 2 *Md. Ch. Dec.* 392.

There is no provision of Constitution or law, which prevents the employment by the State of other attorneys besides those elected as State's Attorneys in the counties; and, indeed, the Constitution assumes the very contrary, authorising the Governor to employ counsel, and making it the duty of the Comptroller to "enforce the collection of all taxes and revenue." Const., Art. 2, sec. 21, and Art. 6, sec. 2. But whether the State authorities have or have not the right to entrust the conduct of a suit to the attorney who appears in the case, and whether such attorney has been duly employed or not, are questions in which the defendants have no concern. In a case of an unwarranted intrusion of any attorney into a case brought in the name of the State, the Court might, perhaps, of its own motion, or on the motion of the State's Attorney for the county, order the unauthorized appearance to be struck out, and the appearance of the State's Attorney to be entered.

II. The defendant, after judgment, on his plea in abatement, filed nine pleas.

After joinder in demurrer, and issues on the replications, judgment on all the demurrers was given in favor of the plaintiff, rightly, as the appellee contends, on the following grounds:

In order to bind the sureties it is not necessary to show that the arrears were placed in the hands of the sheriff after the filing of the bond; though that was actually done in the present case. The bond, it is true, cannot be held responsible for any acts of the sheriff, or for any collections made by him before its date; but the placing the arrears of

taxes in his hands, which means nothing more than the delivery of an account, is the duty of the commissioners; the duty of the sheriff is to make the collections, and before he enters upon that duty he must give the bond. (1852, ch, 110, sec. 11.) The time when the commissioners do their duty, whether before or after the bond is given, is not material. Indeed, the terms of the 8th sec. of the Act of 1852, indicate that the delivery of the tax list by the commissioners must precede any action on the part of the sheriff. The words are: "If the tax payers of said district fail to pay their taxes, &c., by the last day of March, &c., it shall be the duty of the commissioners, &c., immediately to place the arrears of the taxes not paid, &c., into the hands of the sheriff, who shall proceed, &c."

If McCauley "did not in fact collect" any of the State tax after giving bond, there certainly was a failure to perform the condition of the bond, for it was his duty to collect, and for that purpose he was clothed with all the powers and subject to all the liabilities of tax collectors under the laws of the State.

The defendants cannot plead the non-receipt of the tax list, unless it is stated in the plea that the collector applied for the list to the proper officer, and that he refused or neglected to furnish it. *State vs. Scharff,* 3 *G. & J.,* 95.

There is nothing in the law confining the levy of the State tax to the period mentioned in the eighth plea; the case is entirely different from that of a special authority to the county commissioners to levy for a particular purpose, and all our State tax laws look to the absolute necessity of the levy being made and the tax being collected, and provisions are made for the levy in case of the neglect or refusal of the commissioners to perform their duty in the premises; and by no such neglect or refusal is the State to be hindered, in the exercise of its high prerogative, in providing means for the support of the government and maintaining its credit. Act of March Session, 1841, ch.

23, secs. 45, 58. 1843, ch. 203, secs. 12 and 16. 1844, ch. 236. *Milburn vs. State,* 1 *Md. Rep.,* 17. *State vs. Milburn,* 9 *Gill,* 97. It was not necessary that the bond should state that McCauley was sheriff. It is not denied that he was the sheriff at the time; the law designates him as the person bound to act as collector, and in his character as collector, the bond is given. Besides, the defendants are estopped from denying that McCauley was collector. *Billingsley vs. State,* 14 *Md. Rep.,* 375.

III. At the trial the plaintiff offered in evidence the bond sued on, after proving the endorsement, showing the recording thereof to be in the hand writing of the deputy of the clerk of the Circuit Court for Howard County. The admission of the bond in evidence, on this proof, is the subject of the defendants' first bill of exceptions. The appellee insists that this ruling was correct. The proof was sufficient to show the execution and recording of the bond. *Ayres vs. Grimes,* 3 *H. & J.,* 95. *Phillips on Ev.,* 743. And the enrollment is evidence of all circumstances necessary to give the bond validity. *Crawford vs. State,* 6 *H. & J.,* 231. *Young vs. State,* 7 *G. & J.,* 253. The defendants' special plea of *non est factum* also admits the signing, sealing and delivering of the bond, and this admission is *prima facie* evidence of the acceptance and approval of the bond. *Union Bank vs. Ridgely.,* 1 *H. & G.,* 325. *Milburn vs. State,* 1 *Md. Rep.,* 11.

IV. The defendants' third bill of exceptions, is to the ruling of the Court, granting the prayer of the plaintiff, and rejecting that of the defendants.

*Plaintiff's Prayer.* "That, if the jury shall believe from the evidence in this case, that the bond offered in evidence was recorded, as it purports to be, in the office of the clerk of the Circuit Court for Howard County, then under the issues in this case, the plaintiff is entitled to recover the balance shown by the certificate of S. S. Maffit, Comptroller, offered in evidence by the plaintiff."

*Defendants' Prayer.* "That the defendants are entitled

to a verdict on the issue joined on their first plea, if the jury shall find, that the bond in suit was not probated."

In support of the correctness of this ruling, the appellant refers to the cases already cited, and also to *Laurenson vs. State*, 7 *H. & J.*, 339. *Burgess vs. Lloyd*, 7 *Md. Rep.*, 178.

All the requirements of the Acts of Assembly, necessary to give validity to such bonds, were complied with, as the evidence shows. The terms of the first plea are, that the bond "was never probated, approved and recorded, *according to the force and effect of the Acts of Assembly, in such case made and provided;*" and the proof that all the requirements of the Acts were complied with, is therefore a conclusive answer. No probate was required by law, and the question as to probate, independently of the Acts of Assembly, could not properly be submitted to the jury. Even if probate were necessary, the enrollment of the bond was evidence that it had been made, and there was no evidence on the part of the defendants, sufficient to rebut the presumption arising from the enrollment.

Bowie, C. J., delivered the opinion of this Court:

The appellants were sued by the State on a bond executed by them on the 18th April 1856, with the condition annexed: "That if the above bound Joshua McCauley, shall well and faithfully execute his office as collector of the State taxes, and shall well and truly account for, and pay over to, the Treasurer of the State of Marylnnd, the several sums of money which he shall receive or be answerable for, at such times as the law directs, then this obligation to be null and void, otherwise to be in full force and virtue." Endorsed on which bond, was as follows: "Approved by the board of Commissioners of Howard County, April 22d, '56.—Chas. G. Worthington, Wm. J. Timanus, Thos. H. Hood." "Filed April 22nd, 1856, to be recorded; same day recorded in liber W. H. W., folio 161, &c., one

McCauley, et al., *vs.* State.

of the chattel record books of Howard County, and examined,—per *W. H. Worthington, Clk.*"

The appellants pleaded in abatement, that the action was not instituted by the State's Attorney of Howard County; which being demurred to, and the demurrer sustained, they then pleaded nine pleas in bar of the action. Issues in fact were joined on first, second and fourth pleas, and demurrers entered to the third, fifth, sixth, seventh, eighth and ninth, all of which were ruled good. Three exceptions were taken by the appellants, the first and second to the admission of the bond and account of the Comptroller as evidence, which have since been abandoned, the third to the granting of the prayer of the appellee, and the rejection of the prayer offered by the appellants. The verdict and judgment being for the appellee, the defendants appealed. The appellants' first point is, that the plea in abatement should have been sustained, because the law expressly requires these suits to be brought by the State's Attorney, and no functionary can employ other counsel to institute a suit for the State. Suits for the State must generally be brought by the State's Attorney, yet, there are exceptions in the law, (*vide* Code, Art. 11, sec. 23,) and the plea if available at all, should have negatived those exceptions. This Court cannot presume the action has been brought without the authority of law. Attorneys at law, are officers of Courts of Justice, presumed to act under high professional obligations, for the faithful discharge of which, they are summarily responsible. When their appearance is entered, it is presumed to be done by the authority of their principals, and whatever is done in the progress of the cause, is esteemed as the act of and binding on their clients. *Henck vs. Todhunter,* 7 *H. & J.,* 275. *Fowler vs. Lee,* 10 *G. & J.,* 358. *Munnickhuysen vs. Dorset,* 2 *H. & G.,* 274. If the State is bound by the act of her attorney on the record, as seems to be settled by the preceding decisions, it cannot prejudice the defendant, that the attorney acting in its behalf is not the State's Attorney *ex-officio*

72    v. 21

for the county. It does not affect the jurisdiction, the form of the action, or the parties. There is no precedent for such a plea in abatement.

If the Executive or other officer of the State, for peculiar reasons, have authorised the institution of the suit, we think it would be informal and irregular in this incidental manner, to decide upon the constitutional or legal power of such officers to do so: *"omnia præsumuntur rite acta."* We therefore concur with the Court below in ruling this demurrer good, to the plea in abatement. The demurrer to the third plea involves the construction of the special Act of 1852, ch. 110, applicable to Howard County, then Howard District. The eighth section provides, that if the tax payers fail to pay their taxes as thereinbefore authorized (i. e. to the Treasurer, see 7th and 8th sections) by the last day of March, in each year, the commissioners shall immediately place the arrears of taxes not paid as aforesaid, into the hands of the sheriff, &c., who shall collect and complete the same within nine months from the time said taxes are placed in his possession.

The plea avers, that *after* the execution and delivery of the bond in suit, the commissioners of Howard County *never ordered* any taxes whatever to be placed in the hands of said McCauley. It does not traverse the fact of *placing the taxes not paid* into the hands of the sheriff, but the *order*. If it was intended to assume, as a defence, the position that the bond was not responsible for any act of omission or commission of the principal obligor, prior to its execution, there could be no doubt of its correctness; but it seems to be framed upon an immaterial issue—and does not necessarily, present the point designed. The law as cited, does not require any order of the commissioners, it seems to impose on them a manual duty, the delivery of the tax lists to the sheriff; if this delivery was made by them *actually or constructively* after the bond was executed and approved, the obligation to collect and account attached as a legal consequence. If the tax lists came into the

McCauley, et al., *vs.* State.

sheriff's hands before the day of executing the bond, in anticipation of, and preliminary thereto, it was an inchoate conditional delivery, which was consummated by the execution of the bond.

The fifth, sixth and seventh pleas present similar defences in principle to that relied on by the third, based on different facts. Divested of their technical language, they aver that Joshua McCauley, *after* the execution, approval and delivery of the bond, did not *receive* for collection, and did not in fact collect, and was not *entitled* to collect, any State taxes whatever; that said bond was not approved or accepted by the commissioners of Howard County, until the 22d day of April 1856, and that after said approval and acceptance, no arrears of State taxes whatever *were placed* in the hands of said McCauley, *nor was he answerable for any arrears;* that long prior to the approval of the bond, the *commissioners placed* in the hand of the said Joshua Mc-Cauley, all the arrears of taxes due to the State on the 1st March 1856, and he did not after such approval and acceptance, receive for collection, nor was he answerable under the terms of said writing. These are double pleas, presenting issues of fact and issues in law, and as such, were liable to demurrer.

Independently of this objection, they do not constitute valid pleas in bar of the action, because non-reception of the arrears of taxes after the date of the bond alone, without sufficient cause being assigned, was no defence to, but rather a breach of the obligation he had assumed to discharge; and the fact mentioned in the seventh plea, that the arrears of taxes had been placed in the hands of Mc-Cauley, prior to the approval of the bond, did not strengthen it, without showing they were placed there to be collected before the execution of the bond; if they were placed in his hands conditionally, preparatory to the execution of the bond, the delivery was inchoate and imperfect, not consummate, so that each plea analyzed, offered an immaterial issue, and was bad for duplicity.

The ninth plea, is a special *non est factum.* It does not aver that the person described in the bond, as collector of the State taxes, was not at the time of the execution of the bond, sheriff of Howard County in fact, but that he did not execute the bond *"eo nomine."*

The duty imposed upon him by the Act of 1852, ch. 110, was not a duty appertaining to the office of sheriff. The law could not constitutionally have imposed on the sureties in the sheriff's bond, the superadded obligations of a collector, but being a distinct and separate office, a new bond was required of him; two offices were united in the same person by the Act, which designated him by his office, instead of his name, the words "Sheriff of Howard County," are use as a *"descriptio personæ,"* and not to indicate that the bond as collector was to be executed in his official character as sheriff.

If the fact was, that the person described as collector, was not the sheriff of Howard County, it should have been pleaded, viz: that the person appointed collector was not in fact the sheriff of Howard County, which would have made it necessary for the Court to decide, whether any other person than the sheriff of that county, could legally act as collector. The issue raised by the plea, is, in our opinion an immaterial one. It could not in any manner add to the validity of the bond, to describe the principal obligor by his *other* office; it was not necessary to show on its face, a compliance with the Act of Assembly in that respect, and the absence of such description, does not diminish its legal effect. The prayers present two conflicting propositions. On the part of the plaintiffs, it is insisted, if the jury believe the bond was recorded, as it purports to be, then under the issues in this case, the plaintiff is entitled to recover. The defendants contend, if the jury believe the bond was not *probated,* they should find for the defendants on the first plea.

The first assumes that proof of recording, is *prima facie*

evidence of all that preceded it, required by law to authorise its registration.

The second, that probate of the bond was essential to its validity, and sufficient evidence had been offered by the defendants, to rebut the *prima facie* case made by the plaintiffs.

The Act of 1794, ch. 53, requiring *probate* of the execution of the collector's bond before recording, and making an office copy of the bond and *probate* evidence, in all suits on the bond, refers specifically to bonds for the collection of county charges. The Act of 1841, ch. 23, sec. 45, being the Act entitled, "An Act for the general valuation and assessment of property in this State, and to provide a tax to pay the debts of the State," sec. 45, requires the commissioners of the several counties and Howard District, to appoint a collector or collectors to collect said tax, and every collector, before he acts as such, shall give bond to the State with good and sufficient sureties, to be approved by the Levy Court or commissioners by whom such collectors were appointed, which bond shall be executed, attested, approved and recorded as other collectors' bonds are now required by law. The provision requiring probate is omitted.

The Act of 1845, ch. 5, reciting in the preamble the provision of the Act of 1794, ch. 53, which required collectors' bonds, with the probate thereof, to be recorded by the *clerks of the Levy Courts,* and the fact that, in several counties, records of the Levy Courts were not kept, enacted, that all bonds for the collection of taxes imposed or to be imposed for the use of the State, shall be recorded *in the clerk's office of the several counties and Howard District,* and "attested copies thereof, under the official seal of said clerks, shall be evidence in the Courts of Law and Equity of this State." All reference to the probate is again omitted in the enacting clause. Although these Acts are in *pari materia,* they are to be construed so as to protect the interests of the State, and not defeat their object. A provision clearly

directing, and applied to another class of bonds, if not complied with, is not to be made a defence to the cause of action. But it is argued, though the probate was immaterial, still the plaintiff must prove it, as he has not demurred to the plea, but traversed it.

This brings us back to the legal effect of an official copy of an instrument, made evidence by statute. Such copies are *prima facie* evidence of all that is necessary to authorise their registration, when it appears they have been duly recorded.

There was then upon the production of the office copy of the bond, a *prima facie* proof of that instrument. The burden of sustaining the facts pleaded in bar, in the first plea, was on the defendants. That testimony was purely of a negative character, viz: "That no probate of said bond is recorded to have been taken or had," that the subscribing witness "has no recollection that he was ever called on to prove, or did prove before said commissioners or any one else, the execution of said bond so attested by him as subscribing witness, nor does he recollect when the bond was signed, or any other circumstance, but that he witnessed its execution he is certain, as he recognises his signature." This testimony does not furnish the proof it was necessary for the defendants to produce, to maintain the issue on their part, to entitle them to the verdict, and therefore their prayer, to that effect, was properly refused. Nothing then stood in the way of the adoption of the plaintiff's prayer, which is a condensed expression of the enactments on that subject. It follows from the premises, that, in the opinion of this Court, there was no error in the judgment of the Court below in sustaining the several demurrers of the plaintiffs to the plea in abatement, and the pleas in bar, or in granting the prayer of the appellee and rejecting that of the appellants.

*Judgment affirmed.*

(Decided June 1st, 1864.)