Mr. Justice Hagner
delivered the opinion of the Court:
Several of the objections, of the appellants to the decree passed in No. 9949 are based upon the idea that at the time *580 it was passed the Brush-Swan Company was really not in existence as a corporation, and therefore had no capacity to. employ counsel or assent to" the decree.
The charges relied upon to establish the dissolution of that company at the date of the decree are, first, that although the company was incorporated in December, 1883, under the laws of West Virginia, yet in July, 1884, it was reorganized under the laws of the District of Columbia. But the proof does not sustain this assertion, and there is nothing to show that Leiter was a subscriber to or had any Connection whatever with the pretended organization in the District. His subscription was made under the West Virginia organization ; and the new project was never in fact organized into a corporation. The company which was made a defendant in Leiter’s bill was the Brush-Swan Company, incorporated under the laws of West Virginia, and its charter as a West Virginia corporation was filed with that.bill. No attempt to incorporate another company here, even if it were accomplished under the same name (which it is averred was not the case) could destroy the incorporation under the laws of West Virginia.
2d. It is claimed that as there had been no-meeting of the Brush-Swan Company since October 27, 1885, and the company then decided to dispense with many of its servants and officers, and was without the mpans of performing its projected work of lighting the streets and houses of the city, and was practically insolvent, this state of facts amounted in law and fact to a dissolution of the corporation.
It is replied in proof that the inability of the Brush-Swan Company to perform its work was due to the refusal of the District authorities to allow it to introduce its wires throughout the city, although the privilege was given to the United States Company; and that its embarrassments throughout resulted from the conspiracy of the United States Company with some of the agents of the Brush-Swan Company to *581 wreck or crush it out; but that its then embarrassed condition resulted in nothing more than a temporary inactivity on its part, and cannot be considered as working a dissolution of the corporation.
We do not think the complainant has made good its -contention that the Brush-Swan Electric Company, when the decree was rendered against it on the 20th of September, 188G, was not then an existing corporation, capable in law of suing and being sued, and of exercising the usual powers of a corporation. A corporation does not become dissolved or cease to exist by failure to elect trustees. In such a case its franchise would only be suspended. State vs. Trustees Vincennes University, 14 How., 268 : “A corporation can be dissolved and its existence wholly terminated only by extinguishment of the corporate franchise conferred by the State upon the body of the corporators; for so long as this franchise exists the company continues to be a corporation in legal contemplation, and may sue and be sued in that capacity.” Morawitz on Private Corporations, Sec. 1005. The insolvency of a corporation does not dissolve it. Boston Glass Manf. vs. Langdou, 24 Pick., 53 ; Coburn vs. Boston Papier Mache Co., 10 Gray, 245 ; 14 Wall., 383 ; Bank of Bethel vs. Bank.
A corporation, like a natural person, may become insolvent, but this misfortune does not, of itself, accomplish the death of either.
When the fact of incorporation has been shown, the burden of showing a dissolution is thrown upon the other side. And this can only take place by a surrender by the shareholders, or through a forfeiture by the State in a suit for the purpose; and there are two modes of proceeding judicially to ascertain and enforce the forfeiture of a charter ; the one by scire facias, the other by quo warranto. Regents vs. Williams, 9 G. & J., 426; Town vs. Bank, 2 Doug., Mich., 550.
But this contention of the present complainant is strangely *582 inconsistent with his present bill, in which the Brush-Swan Company is impleaded as a party defendant, and the effort is made to obtain a decree against it as an existing corporation. If the company was an existing corporation in September, 1886, it clearly had the right to confess a judgment for a debt honestly due, and necessarily it possessed the authority to employ an attorney for that purpose. 1 Morawitz on Private Corporations, Sec. 430.
And the authority of the attorney to act is not to be questioned in this form by third persons. “Attorneys at law are officers of courts of justice, presumed to act under high professional obligations, for the faithful discharge of which they are summarily responsible. When their appearance is entered, it is presumed to be done by the authority of their principals, and whatever is done in the progress of the cause is esteemed as the act of and binding on their clients.” McCauley vs. State, 21 Maryland, 569 ; Henck vs. Todhunter, 7 H. & J., 275; Thornburg vs. McCauley, 2 Md. Chancery, 425.
Such would be the legal presumption arising out of the unexplained act of the attorney; but there is superadded here the testimony of Mr. Boutwell, the attorney, who swears he was authorized to confess the judgment by the president of the Brusli-Swan Company; and no complaint is made from that source that he exceeded his authority in the least.
We do not intend to intimate that in a proper case an application like th\e present to vacate a decree would not be entertained by a court of equity. When presented in a reasonable time after the rendition of the decree complained of, as was certainly the case here, the court will listen with interest to the application, and hasten to undo whatever wrong itself had done to suitors because it had been imposed upon by the successful party. But the proper constituents of relief must be presented and established on such an application,, and we do not perceive those features in the present suit. In Fletcher vs. Missouri Pacific Railway, 111 U. S., 520, referred. *583 to by the complainants, the decree assailed was impugned as having been procured by fraudulent conduct on the part of the solicitor and directors of the defendant corporation, which prevented the company from making its just defense. As stated by Mr. Justice Miller in U. S. vs. Throckmorton, 98 U. S., 62, it must appear that by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the case, because of fraud or deception practiced; “ or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client’s interest to the other side.” “ In all these cases, and many others, relief has been granted, on the ground that by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all his case to the court.”
But among the allegations in the present bill, there is no suggestion of fraud on the part of Leiter or of the defendant’s attorney who assented to the decree. True, it is averred the attorney was without authority to act in the case because of the dissolution of the company (which, as we have seen, had not taken place); and of his non-employment; but we have shown that this is negatived by the proof. It is also averred that Leiter had no better right to obtain a decree than other subscribers situated as he was. But this is very different from 'an imputation of fraud against Leiter. And deprived, as the case is, of the indispensible ground for interference that 'the decree was obtained by fraud, the case only presents the action of a vigilant creditor who has obtained a decree while others claiming to be similarly circumstanced were waiting for some one else to make them move. Those who put their own shoulders to the wheel without waiting for help from Hercules generally succeed; and 'when their promptness has secured success they can claim from the courts the *584 benefits of the maxim: “Vigilantibus non dormientibus jura subveniunt.”
The petitions of the two intervening subscribers are not before us on this appeal; if they were they could not be sustained, as there is no proof whatever of their averments.

We think the decree below dismissing the bill should be affirmed, and it is so ordered.