# SUPERIOR COURT OF BALTIMORE CITY

Filed June 30, 1896.

NOBLE H. CREAGER
VS.
ALCAEUS HOOPER, MAYOR.

*Messrs. Wm. S. Bryan, Jr., Henry Stockbridge, Jr.,* and *Daniel L. Brinton* for petitioner.

*City Solicitor Thomas Ireland Elliott* and *City Counsellor Thomas G. Hayes* for respondent.

RITCHIE, J.—

The petitioner, Noble H. Creager, claims to have been duly appointed to the office of City Collector, and asks that a writ of mandamus may issue requiring the respondent, the Mayor of Baltimore City, to administer to him as such collector the oath of office prescribed by ordinance for municipal officers.

The City Code, Art. 50, Sec. 31, provides for the biennial appointment of a City Collector "as other city officers are appointed." There is no general ordinance, or statute, providing any specific mode for the appointment of city officers. Under the ordinances as codified in the Code 1893 some are appointed by the City Council alone in joint convention, a larger number by the Mayor alone, and a still larger number by the heads of departments and municipal boards, but probably a majority of the more important officers are appointed on the nomination of the Mayor by and with the advice and consent of the City Council in joint convention. The words "as other city

officers are appointed," however, have always been construed to mean an appointment on the nomination of the Mayor, subject to the confirmation of the joint convention.

The ordinance in controversy, No. 42 of 1896, purports to repeal and re-enact sections thirty-one and thirty-two of Art. 50 of the City Code. Like the Code it provides for the biennial appointment of a collector of taxes to be styled "City Collector," whose duties are to collect both city and State taxes. The only change made which is important to this case is in the mode of appointment, which, it provides, shall be by a convention of both branches of the City Council, instead of on the nomination of the Mayor.

This ordinance, after its first passage, was vetoed by the Mayor. It was then reconsidered, and, being again put upon its passage, received an affirmative vote in each Branch of three-fourths of the members present, there being more than a quorum in each, but not three-fourths of all the members of either Branch. Thereafter the petitioner was appointed to the office of "City Collector" by a joint convention. He then appeared before the Mayor, whose duty it is under Art. 70, Sec. 5, Public General Laws, to administer the oath of office to all city officers, and requested the Mayor to administer to him the oath of office of City Collector. By Art. 1, Sec. 31, of the City Code, it is provided, that all city officers shall, before entering on their duties, take the oath set forth in Art. 1, Sec. 6, of the Constitution. The Mayor refused to administer the oath of office, on the ground that he did not regard the election of the petitioner as legal, and thereupon Mr. Creager filed his petition for a writ of mandamus, requiring the respondent to administer the said oath of office.

I make no reference to what transpired in respect to Mr. Creager's bond, because that was disposed of on the demurrer to the answer. The case has been exhaustively argued, and many questions have been raised which I do not think it necessary to pass on.

The respondent asserts, first, that this ordinance is invalid, because it provides for the appointment of the City Collector by a convention of the two Branches; secondly, that it was not duly passed over his veto. And,

further, in case the ordinance is not void in either of these respects, he sets up other defences that are peculiar to the dual character of the City Collector, and also rest on the action of the Governor pending these proceedings. A clear understanding of the whole case, and particularly of these special grounds of defence, makes it necessary to refer in some detail to existing and previous legislation upon the subject of the collection both of city and State taxes in the City of Baltimore.

The municipal corporation, under its power to tax, has always had the right to create the office of Collector of city taxes, and, to go no further back, I find that such office was provided for by Ordinance No. 8 of 1826. This office is now provided for and its duties defined by Article 50 of the City Code, sub-title "City Collector." The State Code, Article 81, Section 31, provides that "the Mayor and City Council of Baltimore, shall, on or before the third Tuesday in April *in each year*, or as soon thereafter as may be, appoint * * * one collector for Baltimore City for the collection of all State taxes levied or to be levied for the current year." This power was first granted, as far as I have been able to find, under the Act of 1841, Chapter 23, Section 45. Prior to this, the State taxes in the City of Baltimore were, no doubt, collected by officers appointed by the levy court of the county.

This power was continued under the Code of 1860, but by the Act of 1865, Chapter 155, it was provided that the Mayor and City Council of Baltimore, instead of one collector of State taxes for the whole city, should appoint one for *each of the three legislative districts*. The Act of 1868, Chapter 366, went back to one collector, and so it is provided in the Act of 1874, Chapter 483, the thirtieth section of which is now Section 31 of Art. 81. By Art. 81, Secs. 33-34, such "Collector of state taxes" in Baltimore City, is required to give bond to the State, to be approved by the Governor, to account with the Comptroller, and to deposit the State's money in a bank to be designated by the Treasurer; and by Sec. 36, he is to take the oath therein prescribed.

There is thus vested in the Mayor and City Council of Baltimore, the

power to appoint both a collector of city taxes and a collector of State taxes, the functions of each being perfectly distinct. The office of one is created by ordinance, his term is now two years, his bond is to the city, he takes the oath of office prescribed by ordinance, before the Mayor, and his duties are defined by the City Code. The office of the other is created by statute, his term is one year, his bond is to the State, he must take the oath prescribed by Art. 81, Sec. 36, before the Clerk of the Superior Court, and his duties are defined by the State Code. While these offices are distinct and a different person may be appointed; to each (Art. 81, Sec. 4), the practice, except during the three years under the Act of 1865, has, for the convenience of administration, always been to appoint the same person to each office, and thus, as was the case in McCauley vs. State, 21 Md. 572, unite two offices in the same person.

The respondent contends that this Ordinance No. 42 attempts to provide for the appointment of both officers by one and the same act. I concur in this construction, but not at all in the conclusions sought to be drawn therefrom. Ordinance No. 42, in this connection, is exactly like section thirty-one of the City Code, and this section (except that it provides for a biennial instead of an annual appointment) is a codification of Section 1, Ordinance No. 46, of 1862. It is important to note in passing that the entire sub-title, "City Collector," is, with some immaterial amendments, the codification of the ordinance of 1862.

The ordinance of 1826 "for collecting the taxes of the City of Baltimore," already mentioned, provides only for the collection of city taxes. The next general ordinance which I find, No. 7, of 1838, also provides for city taxes only. Then follows the Act of 1841, authorizing the appointment of a collector of State taxes, and the first general ordinance for the collection of taxes which I find after this Act, No. 11, of 1850, provides for the appointment of "a collector of all taxes" imposed either by the corporation or the General Assembly. This is the ordinance which appears in the compilation of 1858, R. O. No. 10. Next comes the ordinance of 1862, and it, and the City Code (Sec. 31) and this ordinance No.

42, all in the same terms provide for the appointment at a stated time of "a collector of taxes to be styled the City Collector," whose duty it shall be to collect all taxes levied by both the city and State.

Except during the three years when there was a State collector for each legislative district, (Ord. 1866, No. 50), there never has been, so far as appears, a separate ordinance providing for the appointment of a collector of State taxes in Baltimore. So far as the practice has been shown in evidence, it appears that in some years there would be separate appointments and qualifications for each office; sometimes separate appointments, but only one qualification; and in some years one appointment and one qualification. But, in my judgment, as stated, all these ordinances provide for the appointment of both officers, that is, the City Collector of city taxes and the City Collector of State taxes by one and the same act of appointment; though it is necessary for the appointee to qualify separately by oath and bond for each office.

Prior to Ordinance No. 4 of 1887 the term of office of the Collector of city taxes was one year, just as was that of the Collector of State taxes, but that ordinance provided for the *biennial* appointment of a large number of city officers, including the Collector of city taxes, and in the City Code of 1893 the word "biennial" is introduced into the ordinance, and copied therefrom into the ordinance now in controversy. This ordinance therefore provides that the term of office of *each* collector shall be *two years*, whereas the term of the collector of State taxes is limited by statute to one year.

It must be further noted that Art. 81, Sec. 39 provides, that if there be no "Collector of State taxes" in Baltimore City, *"qualified"* as required, by the 15th of May in any year, the Governor shall then appoint, from any part of the State, such a collector for the city. Under this section, and pending these proceedings, the Governor on May 15th appointed Mr. Lewis N. Hopkins as "Collector of State taxes for Baltimore City," for the term of one year, beginning on the third Tuesday of last April; and that gentleman has filed his bond, taken the oath of office before the Clerk of the Superior Court, and is

now in possession of the office of Collector of State taxes for the city.

Now, then, as this ordinance provides for the appointment by one and the same act of both collectors, the counsel for respondent have most strenuously argued, first, that the provision of a term of two years for the collector of *State taxes* makes the ordinance *entirely void* so far as it provides for the appointment of that officer; and that the duties of the two offices are so inseparably interwoven that, being void as to the collector of State taxes, it is void also as to the appointment of Collector of city taxes; secondly, that the power to appoint a collector of State taxes is conferred on the "Mayor and City Council" jointly, and cannot be delegated to a joint convention, and therefore the ordinance is void as to this office, and, because of the inseparability of the two offices, it is void altogether; thirdly, that as the Governor has filled the office of collector of State taxes, a collector of city taxes could not now be qualified, because of the inseparability of the two offices, and therefore the issue of the writ of mandamus would be nugatory.

It is true that the term of the State collector cannot be abridged or enlarged by ordinance, but if Ordinance No. 42 is otherwise valid, it is not, in my opinion, wholly void as to the collector of State taxes. *The act of appointment* would be good, and the ordinance be void only as to the excess of one year in the term. It is well settled that if a municipal charter, or the Constitution, prescribes a fixed term of office, an appointment under an Act of Assembly or ordinance which provides for a *shorter* term, is good, and only *the limitation of the term* is void. The appointment would be good for the full term. Stadler vs. Detroit, 13 Mich. 346; People vs. Rosborough, 14 Cal. 180; State vs. Brady, 42 Ohio 507.

If therefore the statutory term of the collector were two years, and he were appointed under an ordinance which prescribed a term of but one year, the appointment would be good for the statutory term, and the ordinance void only as to its limitation. I can see no reason why the same rule of construction should not apply in this case, and I therefore think that the act of appointment under such an ordinance as this would be good for the

statutory term, and the ordinance void only so far as it attempted to enlarge such term. In People vs. Tyrrell, 87 Cal. 475, the Governor had the power of appointment to a certain office until the end of the next session of the legislature; he appointed for a term of four years, and it was held that the appointment was good for the period he had the power to fill, and void only as to the enlargement. See also Hartshorne vs. Schoff, 51 N. H. 316.

I do not concur with respondent as to the depository of the power to appoint the collector of State taxes. It is not conferred upon "the Mayor and City Council" to be exercised only by the joint participation of each in the act of appointment, and no question of delegation arises. It is a power conferred upon "the Mayor and City Council of Baltimore," that is, upon the body corporate, and like other corporate powers, it can be exercised only by means of an ordinance duly passed. Mayor vs. Porter, 18 Md. 300. And so the ordinances have always provided how the State collector should be appointed.

Nor can I agree with counsel for respondent as to the effect of the Governor's appointment to the office of Collector of State Taxes, on the right of the petitioner to the office of Collector of City Taxes. If he was duly appointed to both offices, it would be a case of unusual hardship, should he be unable to secure even one of them, because the action of respondent has caused him to lose the other. A much more important consideration would be, that the City of Baltimore should not be deprived of its right to have its own collector of city taxes, because the Governor has appointed a State collector.

The duties of these two offices, however, as has been already shown while speaking of their establishment, are not so interwoven as that they cannot be filled by different persons. The law as to the duties of the collector of city taxes is today, just what it was under the ordinance of 1862, and as to the collector of State taxes, it is substantially what it was under the Code of 1860. I therefore do not see how it can be profitably argued that these two offices are inseparable, in the face of the fact, that for three years under the Act of 1865, *they were separated*. The

only reason why they are not separated now, is because Governor Lowndes saw fit to appoint Mr. Hopkins as State collector at a time when he was holding over as collector of city taxes.

As the two offices are separable the action of the Governor does not affect any right the petitioner may have to the office of collector of city taxes, nor would such right be affected, even if this ordinance were void as to the appointment of State Collector.

We come then to the consideration of the validity of this ordinance as applicable to a municipal office, and the controlling questions are: Is it invalid because it provides for the appointment of a collector of city taxes, by a convention of both branches of the city council? If not, was it duly passed over the veto of the Mayor?

At or about the time of the passage of this ordinance, a number of others were passed in like manner over the veto of the Mayor, providing that nearly all the appointments heretofore made on the nomination of the Mayor, should hereafter be made by a convention of both Branches. This community for many years has been accustomed to see the larger part of its principal municipal officers appointed on the nomination of the Mayor, subject to confirmation, and it is not a matter of surprise that the proposed abrupt and radical change of policy should have excited much public comment, or that the respondent should have looked upon it as an attack upon the powers of the Mayor, and have characterized this ordinance as part of a revolutionary scheme to deprive him of a right to participate in the appointment to the offices in question.

My province, however, is simply to construe certain provisions of the city charter, and in determining whether or not this ordinance is valid under the terms of the charter, I have nothing to do with the relations then existing between the City Council and the Mayor, nor have I any more right to inquire into the motives of the City Council in passing it, than I have to question the motives of the Mayor when he vetoed it. The powers of the Mayor and City Council of Baltimore are just such as the Legislature sees proper to make them, and if this ordinance has been lawfully passed in the exercise of a power which, by reason of changed conditions, growth of population, or otherwise, should no longer be possessed, the remedy is with the Legislature. But if thus lawfully passed, it cannot be revolutionary, and if the Mayor has no such vested right, as is claimed, he is, of course, not deprived of any such right.

On the first inquiry the respondent contends that the *power of appointment* to all city offices is vested under the charter in the "Mayor and City Council;" that *each* is a necessary constituent, and *each* has the right to participate in the act of appointment to every office.

In my opinion neither is a necessary factor in the act of appointment, and the proposition of respondent cannot be maintained. If the Mayor has such a right as is claimed, it must be found in the charter, for his office is statutory and all his powers and duties depend on the provisions of the charter. There are no powers inherent in the office. I Dill., Sec. 208.

The statute which provides for appointments to municipal office is Section 30 of Article 4, P. L. L., viz: "They (that is the Mayor and City Council) may pass ordinances regulating the manner of appointing persons to office under the corporation, which they are or may be authorized by law to appoint, but *unless such ordinances be passed*, the Mayor shall nominate and, by and with the advice and consent of a convention of the two branches of the City Council, shall appoint all officers under the corporation, except the register of the city and the clerks employed by the city or under its authority; the register shall be appointed by a convention of the two branches of the City Council," etc.

This section is a codification of the Act of 1817, Ch. 148, Sec. 2, and of the Act passed March 6th, 1829 (Acts 1828-9, Ch. 114). But for the earnest argument on behalf of the respondent, it would not have occurred to me that this section could mean anything else than what on its face it would seem to purport, that is, that, except as the Register and clerks, the Mayor and City Council may provide by ordinances how, and by what municipal agency, all city officers shall be appointed, but that *in case of failure so to provide*, they shall be appointed on the nomination of the Mayor, subject to the con-

firmation of 'the City Council in joint convention.

The Mayor and City Council have so construed this power ever since the Act of 1828-9, and that such is its true construction has never, so far as I know, been questioned before. Since that act neither the Mayor or the City Council has been a necessary constituent in the act of appointment to office. The whole subject-matter was then transferred to the municipal corporation, to be provided for by ordinance in the discretion of its legislative department. It can hardly be necessary to say that the approval of the Mayor to any such ordinance is not a necessary requisite. Any ordinance duly passed over his veto is, of course, as much an ordinance of the Mayor and City Council of Baltimore as if it had received his signature.

A reference to previous legislation confirms this construction of Section 30. Under the original charter, Act 1796, Ch. 68, Sec. 8, the Mayor participated to only a very limited extent in appointments. The Second Branch nominated two persons to each office, and the right of the Mayor was restricted to a choice between the two names submitted. Under Act 1807, Ch. 152, the nominations were made jointly by both branches, the Mayor still being required to accept one or the other of the two persons thus nominated. By Act 1817, Ch. 148, Sec. 2, it was provided that all officers except the Register and clerks should be appointed on the nomination of the Mayor, subject to confirmation by a convention of the two branches.

Thus far the Mayor was not only a necessary constituent in the act of appointment, but under the Act of 1817 (with the exceptions named) not an office could be filled except on his nomination. Under this state of the law an appeal was made to the General Assembly by joint resolution of the Mayor and City Council of 1829 No. 16, to so change the charter as to empower the corporation to pass ordinances regulating the manner of appointing city officers, and in pursuance of this request the Act of that year (1828-9, Ch. 114) was passed, providing that "the Mayor and City Council of Baltimore may pass ordinances regulating the manner of appointing persons to office under said corporation

which they are now or may hereafter be authorized to appoint, anything in the second section of the act (of 1817) to which this is a supplement to the contrary notwithstanding." The Act of 1817 having thus been subordinated to that of 1828; but not repealed, section thirty is a correct codification of both in their relation to each other, and thus the law has stood for nearly seventy years.

It thus appears that during the first twenty-one years of the city's incorporation the predominating factor in appointments was either the second branch or the joint convention; during the next twelve years it was the Mayor; but during the whole history of the city there has been no period, except during those twelve years, when the charter provided that the appointments should be made on the nomination of the Mayor.

Prior to the Act of 1828 the charter had always determined the manner in which city officers should be appointed, and the obvious meaning of the Act was to let the corporation through its governing body determine this matter for itself. At the time of the passage of this act both the Mayor and City Council were necessary constituents in the act of appointment. If it was intended by the Legislature, that they should each, or either, continue so to be, as the respondent claims both now are, what possible purpose was there in the passage of the act?

The respondent contends that the *power of appointment* to office is vested in the "Mayor and City Council," *as separate factors*, under Section 29, Art. 4, P. L. L., and that the only power granted by section thirty is the power to "regulate" *the manner of exercising* the power of appointment vested under section twenty-nine, the existence of which, he claims, is recognized in Sec. 30 by the use of the word "they." I can find no such power in that section. It provides that "The Mayor and City Council shall have power to pass all ordinances necessary to give effect and operation to all the powers vested in the corporation of the City of Baltimore." This section (read as respondent reads it) thus grants to the Mayor and City Council, as the governing body of the corporation, only the right to *pass ordinances* to carry into effect the powers *vested in the corporation.*

and under it the power exists to pass ordinances for the creation of municipal offices; but there is nothing in this section which vests in them the *power of appointment* to such offices. In the absence of statute there would exist the implied power to *pass ordinances* providing how such appointments should be made, but there never has been a time when such implied power could arise, because the matter of appointment to office has always been the subject of express statutory regulation.

The incidental power to regulate the manner of doing a thing, cannot, of course, be so exercised as to subvert the independent or principal power, the manner of the exercise of which is to be regulated. But if there be no such independent or principal power existing outside of the law under construction, it shows that the word "regulate," if used in such law, is not used in its technical sense. Here there is no independent, principal power of appointment, such as is claimed, vested in the Mayor and City Council as constituent factors, under Section 29, or under any other provision of the charter, and the words "regulating the manner" are not subject to the narrow construction contended for.

It is to be noticed that, in the effort to maintain his position, that the Mayor and City Council are each constituent factors in the act of appointment, the respondent finds it necessary to insist that the corporate power to pass ordinances to give effect to the powers vested in the corporation, and the corporate power to regulate the manner of appointments, are vested in *"the Mayor and City Council,"* as distinguished from the body corporate, the name of which is "The Mayor and City Council of Baltimore," and the constituents of which are the inhabitants of the city. I have shown that even by accepting such construction, nothing more results than to show the existence in "The Mayor and City Council" of a power, not to participate jointly in making appointments, but only to provide by ordinance for the manner of making them. There are, however, no corporate powers vested in the *"Mayor and City Council,"* and the whole argument rests on nothing but the abbreviations of "The Mayor and City Council of Baltimore" into "The Mayor and City Council," made

in the course of codification. Such an interpretation as respondent contends for, if applied to the numerous similar instances of abbreviation to be found in the Code, would disintegrate the body politic as established by the charter, and transfer some of the most important corporate powers to a mere agency of the corporate body.

A reference to the charter and its amendments will show that the powers to pass ordinances and to provide for appointments, like the powers to tax, to preserve the public health, to establish a fire department, and so forth, are vested in "The Mayor and City Council of Baltimore," the body corporate, and the City Council and the Mayor in his legislative capacity, are simply the municipal agency through which these powers are exercised.

Municipal legislation further shows the uniform construction, given to the Act of 1828. Taking the City Code of 1893, it will be found that there is not a single city office, the manner of appointment to which, is not provided for by ordinance. There is not an appointment or nomination to office made by the Mayor, which some ordinance does not authorize him to make.

Still referring to the Code of 1893, the different modes of appointment therein provided for, show that it has never been supposed since 1829, that the statute law required the concurrence of the Mayor and City Council in the act of appointment, or that it made either of them a necessary constituent in such act.

The following instances point out the different modes of appointment—The Mayor alone appoints the six superintendents of lamps; and the commissioners of all public squares; the appointments under the Health Board are made by the Board, subject to the approval of the Mayor alone; the Assistant Librarian is appointed by the Librarian, subject to the approval of the Mayor; and the one-hundred and twenty-three lamplighters are appointed by the Mayor alone. The men who hold the humble positions last named have their fixed term, take the oath of office, and are exempted from bond only by virtue of a special ordinance. They, like the man who runs the elevator at the City Hall (whose nomination must be confirmed by the joint

convention) are all recognized as city officers.

On the other hand the public school commissioners and the public printer are appointed by a joint convention of both branches, and under Ordinance 1833, No. 16, the Commissioners of Finance were appointed in like manner and continued so to be until a few years ago.

But some of the most important officers of the city are appointed by heads of departments, or municipal boards, without the participation of either the Mayor or City Council; among whom are the following, viz: The Water Registrar, the Power Engineer, the Deputy Comptroller, the Deputy Register, the Chief and Assistant Engineers, and Superintendents of the Fire Department, the Engineer of the Harbor Board, the Superintendent of the Public Schools, and the Assistant, the Deputy City Collector, and twenty or thirty bailiffs and assessors. In some instances also the appointments have been made by the ordinances which created the office.

From this examination of the law the ordinance in question, in my opinion, is not invalid on the ground that it provides for the appointment by a convention of both branches of the City Council of a City Collector charged with the duty of collecting city taxes. Its validity so far as it relates to the appointment of a City Collector of State taxes is not involved in this case.

The next inquiry is, was this ordinance duly passed over the veto of the Mayor?

The Charter, Art. 4, Sec. 13, P. L. L., provides that: "All ordinances passed by the City Council shall be sent to the Mayor for his approbation, and when approved by him shall become a law, but if the Mayor shall not approve of any ordinance, he shall return the same within five days, with his reasons in writing therefor, and if three-fourths *of both branches* of the City Council on consideration thereof approve of the Ordinance, it shall then be an Ordinance to all intents and purposes." "Both branches," of course, means *each* branch acting separately, and not in joint convention. Baltimore vs. Kirkley, 29 Md. 107.

It appears by the Journal of the First Branch that, when this ordinance was put on its passage after the veto, three members were absent, and, of the nineteen members present, fifteen voted in favor of its passage and four against it. From the Journal of the Second Branch, it appears that two members were absent, and of the nine present, seven voted in favor of the ordinance and two against it. The ordinance therefore received the vote of three-fourths of the members present in each Branch, but not three-fourths of all the members of either branch. Did it receive the vote of three-fourths of each *"Branch"?*

The meaning of three-fourths of "the Branch" has been practically settled by the Court of Appeals and is not open to serious controversy. Whatever may be the total number of a legislative body, such body is in legal session when a quorum of its members are duly assembled. Such quorum is the legal body, and is recognized as the "Branch," the "House," or the "Board," as the case may be. The Court of Appeals in Heiskell vs. Mayor, 65 Md. 149, defines a quorum as "that number of the body which, when assembled in the proper place, will enable them to transact their proper business, or, in other words, that number that makes the lawful body, and gives them the power to pass a law or ordinance."

In United States vs. Ballin, 144 U. S. 5, with reference to the House of Representatives, it is said that, with the presence of a quorum, "the House was authorized to transact any and all business." Also, viz.: "The general rule of all parliamentary bodies is that when a quorum is present the act of the majority of the quorum is the act of the body"—Ib. 6. That the quorum constitutes the legal body; see also State vs. Porter, 113 Ind. 82; Barnet vs. Patterson, 48 N. J. L. 400.

It thus being established that the members present, provided there be at least a quorum, constitute the legal body, with full power, in the absence of any limitation imposed by superior authority, to transact all business, it is necessary only to refer again to Heiskell vs. Mayor, which decides that a majority of its members constitute a quorum of each Branch, that is to say, constitutes "the Branch." The question is thus settled. There having been more than a quorum present in each Branch at the time this ordinance was put on its passage after the veto, it is

manifest from the figures that it received the approval of three-fourths of each "Branch," and was duly passed over the veto of the Mayor.

Had the provision been such, for instance, as is found in the Constitution of Maryland with reference to passing a bill over the veto of the Governor, which requires a vote of three-fifths "*of the members elected*" to each House, or had it been similar in terms to the provision of the charter in respect to the expulsion by either Branch of a member, which requires a vote of three-fourths "*of the whole*" of the members, the vote would not have been sufficient. But, apart from authorities cited, the different terms used in respect to the vote required in the case of expulsion and in the cast of a veto (which are the only cases in which a vote greater than a majority is required), show that the legislature did not mean to require the same vote in each case.

It may be added that not a single authority was submitted on behalf of respondent in conflict with the construction now given to the requirement of a three-fourths vote of the "Branch," and while it was controverted, as applied to an ordinance relating to the matter of appointment to office, it was conceded that a vote of three-fourths of the members present, there being a quorum, was all that was necessary to overcome a veto of any other kind of ordinance.

The law is clearly stated by Judge Cooley, viz.:

"A simple majority of a quorum is sufficient, unless the Constitution establishes some other rule; and where, by the Constitution, a two-thirds or three-fourths vote is made essential to the passage of any particular class of bills, two-thirds or three-fourths of a quorum will be understood, unless the terms employed clearly indicate that this proportion of all the members, or of all those elected, is intended." Const. Lim., p. 168.

That three-fourths of the "Branch," or of the "House," means three-fourths of the members present, there being not less than a quorum, see also Green vs. Weller, 32 Miss. 650; Southworth vs. Palmyra R. R., 2 Mich. 287; Morton vs. Comptroller, 4 So. Car. 462; State vs. McBride, 4 Mo. 303, and Warnock vs. City of Lafayette, 4 L. Ano. 419.

This ordinance, therefore, being valid so far as it relates to the appointment, in the manner provided, to the office involved in these proceedings, and having been duly passed over the veto of the Mayor, it becomes the duty of the respondent to administer to the petitioner the oath of office prescribed by ordinance for municipal officers, and the petitioner is entitled to the writ of mandamus as prayed.